1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


```
MARY BETH HARSHBARGER,      )
                            )
              Plaintiff     )
                            )
                            )
        vs                  )    09cv487
                            )
                            )
MICHAEL REGAN, et.al.,      )
                            )
              Defendants    )
```


    BEFORE:    HONORABLE THOMAS I. VANASKIE
               United States District Judge
               for the Middle District of Pennsylvania

               Hearing Re: Habeas Corpus Petition

               Wednesday, March 25, 2009
               Scranton, Pennsylvania


A P P E A R A N C E S :

For The Plaintiff:        PAUL P. ACKOUREY, ESQ.
                          Law Offices of Paul P. Ackourey
                          116 N. Washington Avenue
                          Suite 1-G
                          Scranton, Pennsylvania  18503


For The Defendants:       CHRISTIAN A. FISANICK, ESQ.
                          U.S. Attorney's Office
                          235 N. Washington Avenue
                          Scranton, Pennsylvania 18503


      KRISTIN L. YEAGER, RMR,CRR - COMPUTER TRANSCRIPT

2

1    MR.  FISANICK: Good morning, Your Honor.

2    MR. ACKOUREY: Good morning.

3    THE COURT: Good morning. All right, we are here for oral
4  argument on the Habeas Corpus Petition filed by Mrs.
5  Harshbarger, in connection with the decision by Magistrate
6  Judge Mannion that she was subject to extradition to Canada,
7  and I'll hear from counsel for Mrs. Harshbarger.

8    MR. ACKOUREY: Thank you, Your Honor. Your Honor, may I
9  remain seated?

10    THE COURT: If you prefer, that's fine.

11    MR. ACKOUREY: Thank you, Judge. Judge, any analysis of this
12  matter regarding extradition begins with Section 3184 of Title
13  18. And here, Judge, Congress indicates that the issue of
14  whether evidence is sufficient to sustain the charge under the
15  provisions of a treaty really rests with an analysis of the
16  treaty or convention. The Act specifically states that;

17    "Certification will occur, if the Judicial Officer finds
18  the evidence sufficient to sustain the charge under the
19  provisions of the treaty."

20    So that takes us to the treaty between the United States
21  and Canada.

22    THE COURT: What about 18 United States Code Section 3190?
23  Evidence on here says;

24    "Depositions, warrants or other papers or copies thereof
25  often evidence upon hearing of any extradition case shall be

1 received and admitted as evidence on such hearing for all the

2 purposes of such hearing, if they shall be properly and legally

3 authenticated."

4    MR. ACKOUREY: Yes, Your Honor. I have no problem with the

5 admissibility of the documents that the Government has

6 submitted, and that has not been challenged in the Habeas

7 proceeding. I believe those documents are admissible, provided

8 they comply with the terms of the statute, and I think they

9 have.

10    THE COURT: All right.

11    MR. ACKOUREY: However, the issue really is what constitutes

12 sufficient evidence, having admitted those? Is it sufficient

13 evidence as required under the treaty? The Government and

14 Magistrate Judge Mannion had cited a string citation of a

15 series of cases, Federal cases, authorizing the use of hearsay

16 alone to establish sufficient evidence justifying extradition.

17    I don't believe those cases shed light on the problems that

18 we face with this particular case, in that --

19    THE COURT: Well, let me ask this question, counsel. Do you

20 agree that the information in the affidavits that have been

21 presented are sufficient -- forget about their

22 competency -- but the information itself, if I found that to be

23 competent information, that is, information I can rely on,

24 would establish probable cause to find that Mrs. Harshbarger

25 has committed the crimes for which she has been accused of in

4

1   Canada?

2       MR. ACKOUREY: I don't, Judge. And one of the problems I

3   have, and it comes right out of Judge Mannion's opinion itself,

4   he goes through eight factors that he relies on from the

5   affidavits to establish probable cause. And then in the next

6   breath, he indicates that, reading the affidavits, and if you

7   could construe the affidavits fairly, present evidence that

8   would suggest that the mens rea element hasn't been reached,

9   that, in fact, this is nothing more than negligence, tortious

10  negligence, if that, and I think that's the language he used as

11  a matter of fact, with regard to his initial opinion,

12  supporting the issuance of a summons as opposed to a warrant.

13      It's important to note, Judge, there was no additional

14  information provided to Judge Mannion from the initial filing

15  of the complaint and affidavits through the extradition hearing

16  itself. And in the initial opinion supporting the summons, he

17  says;

18      "Looking at these affidavits, I'm not even sure there's

19  negligence here, let alone gross negligence, as required."

20      Using the same evidence in his opinion certifying

21  extradition, he cites eight factors that he relies on to find

22  probable cause, but then, in the next breath, says;

23      "A fair reading of the affidavits present facts which could

24  reasonably be interpreted to establish that there was no gross

25  negligence here."

1    He then goes on to say;

2    "But, of course, this is not a hearing beyond a reasonable

3    doubt standard, we are just asking probable cause."

4    But the problem that I have, Judge, is that when he talked

5    about probable cause, and it has been defined in different ways

6    by different courts, one of the definitions that we come across

7    is that there has to be some evidence that a crime was

8    committed and that it was reasonable to believe that the

9    Defendant committed it. Well, if you have evidence, when you

10   look at it, that could go either way.

11   I would submit, Judge, that the Government hasn't met its

12   burden, at least, in establishing that the evidence tends to

13   establish a crime committed and that the Defendant is the

14   person that committed that crime.

15   THE COURT: Well, the evidence included re-enactments of the

16   occurrence.

17   MR. ACKOUREY: Yes.

18   THE COURT: And the investigating officers, on two separate

19   occasions, and I think it's two separate officers, concluded

20   that a shot should not have been taken, that it was not

21   reasonable to fire a shot under the lighting conditions that

22   existed at that time.

23   MR. ACKOUREY: Well, what they concluded, Judge, is that,

24   based upon their re-enactments on two occasions, that it was

25   plausible that what Mary Beth Harshbarger thought she saw was a

1   bear, so they come to that conclusion. They come to the

2   conclusion that it was too dark to shoot. However, the

3   affidavits also indicate -- or at least the evidence that was

4   before Judge Mannion in the case -- that the shot that was

5   fired was fired at 7:55 within the legal hunting day.

6       THE COURT: That's not negligence per se.

7       MR. ACKOUREY: That's correct. And as a matter of fact,

8   Judge, it could be submitted, I think, that the fact that one

9   could fire a shot up to a half hour after sunset would, in

10  fact, suggest that somewhere in Canada, someone had made a

11  determination that there was sufficient light to fire a shot

12  under those circumstances. There's no other -- and it's

13  interesting to note -- nothing in the affidavits, which would

14  suggest that there were any other factors that may have

15  inhibited visibility, like, fog or rain or anything of that

16  nature.

17      THE COURT: Well, there was four to five-foot high grass.

18      MR. ACKOUREY: And that's interesting, too, Judge, because

19  the affidavits say at the Jeep or at the vehicle, the grass is

20  about knee-high.

21      THE COURT: Looks like it's about knee-high.

22      MR. ACKOUREY: I'm sorry, where Mary Beth was located, at

23  the time that she fired the shot, it appeared to be knee-high.

24  Where the decedent is found, it's shoulder height, which would

25  suggest, of course, from the shooter's perspective, that the

1   item or individual or the thing that she's shooting at is not a

2   six-foot tall male but rather something smaller, hunched over,

3   dark clothes, a bear, I mean, that's obviously what she thought

4   she was firing at.

5        The question is, I think, is are those actions, do they

6   rise to gross negligence? Is it a gross deviation from the

7   standard of care that a reasonable person would have exercised

8   under similar circumstances? She's there with a hunting guide,

9   she has a scope on the rifle. Again, the shot is fired within

10  the permissible time for hunting.

11       I would submit, Judge, that other factors outside of Mary

12  Beth's control certainly played a larger role than anything

13  Mary Beth did. In particular, the topography that existed at

14  the time, the fact that it was extremely foggy, and that the

15  decedent's gait was altered, the dark clothes, he was hunched

16  over, looking down, as he's walking through the -- out of the

17  woods, probably played more of a role in this tragedy than

18  anything Mary Beth, herself, had done.

19       Really the question is, Is it a gross deviation from the

20  standard of care? Is there a showing of that? When the

21  Magistrate Judge indicates that a fair reading of the

22  affidavits could suggest, not even negligence here or, at most,

23  tortious negligence, I would submit, then, that the

24  Government's evidence, and it's uncontested evidence, we are

25  looking at their affidavits, is insufficient if one can draw

8

1  different conclusions from the same facts.

2      THE COURT: Why do you say that? I mean, the standard is

3  whether the evidence is such to cause a person of ordinary

4  prudence and caution to conscientiously entertain a reasonable

5  belief of the accused's guilt. So if they can conscientiously

6  entertain a reasonable belief of the accused's guilt, isn't

7  that enough? They can draw either of two conclusions.

8      MR. ACKOUREY: I would argue, Judge, that I think what that

9  means is that a reasonable person looking at the facts in the

10  totality would come to the conclusion that it is more likely

11  than not that a crime was committed and that she's the

12  perpetrator. And when the Magistrate Judge says, Jeez, a fair

13  reading of this, you could see it the other way, I would

14  suggest, Judge, then, it's not enough. If the evidence is such

15  that one can say it is or it isn't, then, does that meet the

16  threshold?

17      Judge, in looking at this case and in determining what law

18  applies and determining the sufficiency of the evidence, both

19  the Government and Magistrate Judge Mannion suggest that the

20  Sylvester case and the analysis used in the Sylvester case was

21  based upon an application of Pennsylvania law arising out of

22  the Dual Criminality Doctrine.

23      THE COURT: Right.

24      MR. ACKOUREY: A fair reading of the Judge's opinion, Judge

25  Jones' opinion in Sylvester, indicates that his analysis is an

1  Article 10 analysis. And I've had an opportunity to read the

2  briefs that were submitted with regard to Sylvester, and would

3  represent to the Court that no one was arguing Pennsylvania law

4  applies, due to dual criminality, they were arguing Article 10,

5  applicability of Article 10 and what does Article 10 mean in

6  the statute -- in the treaty.

7      THE COURT: Has any other Federal Court, besides Judge Jones

8  in the Sylvester case, held that hearsay cannot be relied on,

9  in finding probable cause in an extradition proceeding?

10     MR. ACKOUREY: Judge, not that I'm aware of. However, I

11 think, again, if we take a look at 3184, we are told to go to

12 the language of the treaty itself, the fact that we are dealing

13 with a Canadian statute, Article 10 provision, and in

14 Pennsylvania, makes this case somewhat unique and made

15 Sylvester unique.

16     THE COURT: If this was a shooting that occurred in the

17 Delaware Water Gap on Federal property and Mrs. Harshbarger was

18 charged with commission of a Federal crime, hearsay would be

19 sufficient to establish probable cause at a preliminary

20 hearing, right, in Federal Court?

21     MR. ACKOUREY: I would agree.

22     THE COURT: So why doesn't it make more sense that we have a

23 national standard rather than saying we are going to look to

24 the law of the 50 states?

25     MR. ACKOUREY: Because I don't think we are in a position to

1  legislate, Judge. Let me explain to you what I mean. There's a
2  case cited by the Government, and I may be killing this, it's
3  Greiche v. Burkus, which is a Federal First Circuit case. It
4  involved an Italian treaty and the application of an Italian
5  extradition provision under the treaty within. And there,
6  Article 5 of the treaty had provided -- and there's a long
7  analysis of the history of its treaty and the language and its
8  various amendments to that treaty, and there the treaty
9  provided very similarly to what we face today in this case,
10 that sufficiency would be determined by the law of the place
11 where the person was sought.

12      In its analysis, the Court discussing the history says,
13 Both delegations, both the United States delegation and the
14 Italian delegation, aware that the Courts have applied State
15 law, using that phrase, amended the Italian treaty, treaty
16 within, to apply the law of the requested party. So the Italian
17 treaty of extradition with the United States, which had
18 language almost identical to what we face here, was
19 conscientiously amended to provide that the law of the
20 requested party would be applied in determining the sufficiency
21 of the evidence, for the very reasons that we face in this
22 case.

23      Here, Judge, with the treaty we face with Canada, there
24 were two protocols that had been submitted to amending terms.
25 And it's important to note, Judge, that, in amending the

1  Canadian treaty, as it applied to what crimes are going to be

2  extraditable, the protocol, Article 2 would be first protocol,

3  amended to include that we would compare the statutes of the

4  contracting parties, and the term contracting parties was used

5  clearly to delineate that we are talking about, we're going to

6  look at the laws of Canada, we're going to look at the laws of

7  the United States to determine if there are coordinate

8  offenses. That language could have been used to amend Article

9  10, and it wasn't.

10     THE COURT: What about Article 8. Article 8 says that the

11  determination that extradition should or should not be granted

12  shall be made in accordance with the law of the requested

13  state.

14     MR. ACKOUREY: That's correct. And I think what that means

15  and I think what it has been interpreted to mean is that the

16  issue of whether or not probable cause exists and a definition

17  of probable cause and the applicability of probable cause is

18  going to be best based upon the law of the requested state, but

19  that's different than the evidentiary issue. The sufficiency of

20  the evidence is specifically dealt with in Article 10.

21     As Sylvester notes, in Pennsylvania, Commonwealth v.

22  Buchanan, which is the Pennsylvania State law, regarding

23  admissibility of hearsay and establishment of probable cause,

24  we are not talking, merely, about a procedural or evidentiary

25  issue in Pennsylvania, we are talking about a substantive right

1  grounded in Pennsylvania Constitutional law.

2      THE COURT: That was a plurality opinion?

3      MR. ACKOUREY: It was, Judge. So, Your Honor, the point

4  being that if we apply the plain language of Article 10, I

5  don't know how one could interpret it, other than that the law

6  of Pennsylvania applies, as Judge Jones has done, and apply

7  Pennsylvania law requiring more than hearsay, the evidence

8  submitted and the affidavits were simply insufficient.

9      We address this, and I'm not going to beat a dead horse,

10 but even if one were to accept the evidence, as submitted, that

11 it's insufficient to establish probable cause in this

12 particular case, due to those factors which I have previously

13 mentioned.

14     THE COURT: What about, did you look at Shapiro v.

15 Fernandina, another case cited by the Government?

16     MR. ACKOUREY: I did, Judge.

17     THE COURT: Out of the Second Circuit, Judge Friendly wrote

18 the opinion. There there was a New York statute that said,

19 essentially, that a preliminary hearing and subject to

20 exceptions not otherwise material, only non-hearsay evidence is

21 admissible to demonstrate reasonable cause to believe that

22 Defendant committed a felony, yet, Judge Friendly said, for

23 extradition purposes, that statute has no application.

24     MR. ACKOUREY: But I think -- the difference, I think, the

25 distinction here is that in Pennsylvania applying Pennsylvania

**13**

1  law, it's a substantive right, as opposed to a mere procedural

2  right, and I think that's the distinction here. I think,

3  procedurally, Federal law may apply and admissibility issues

4  and the affidavits are admissible. But where there's a

5  substantive right, due process right is recognized, and under

6  Article 10 of the treaty, I think, Judge, that's the

7  distinction to be drawn.

8      THE COURT: Let me hear from the Government.

9      MR. FISANICK: Yes, Your Honor, may it please the Court. The

10 initial thing that my opponent has not mentioned here is what

11 is the standard of review, and the standard of review for this

12 Court is one of deference. It is not plenary, it is not de

13 novo, it is not a re-weighing of the evidence adduced at the

14 extradition hearing. So with that as the lynch pin of today's

15 proceedings, the Government's argument is that this Court

16 should deny the Writ of Habeas Corpus and give deference to

17 Judge Mannion's finding that, indeed, there is probable cause

18 in this case. I would like to point out --

19     THE COURT: I guess the question here is whether there's any

20 evidence warranting the finding that there is reasonable ground

21 to believe the accused's guilt.

22     MR. FISANICK: There is evidence, Your Honor.

23     THE COURT: Is that the standard you're relying on?

24     MR. FISANICK: Yes, probable cause is the standard, and that

25 is not a high standard.

1     THE COURT: No, as I understand it, on the Habeas Corpus, on

2 Habeas Corpus review, there are two --

3     MR. FISANICK: Yes.

4     THE COURT: -- three issues. One whether the Magistrate

5 Judge had jurisdiction. There's no dispute the Magistrate Judge

6 had jurisdiction.

7     Two, whether the offense charged is within the treaty.

8 There's no dispute that the offense charged is within the

9 treaty, correct, Mr. Ackourey?

10     MR. ACKOUREY: Correct.

11     THE COURT: And third, whether there was any evidence

12 warranting the finding that there was reasonable ground to

13 believe the accused guilty. Mr. Ackourey challenges that on two

14 grounds: One, first, the evidence itself, looking at Article

15 10, hearsay would not be sufficient to establish probable cause

16 in the Pennsylvania State Court prosecution at a preliminary

17 hearing, so that all that was presented here was hearsay, so

18 that, on that ground alone, extradition should be denied, and

19 the second is, even the information that was provided, would

20 not establish probable cause. Have I re-stated your arguments

21 correctly?

22     MR. ACKOUREY: That's a fair restatement, Your Honor.

23     MR. FISANICK: That's correct, Your Honor. Again, it goes

24 back to a deferential standard of review. A couple arguments

25 have been made here why there's no probable cause, and I submit

1  to you that there is probable cause. First, the Defense seems

2  to hang its hat on the fact that Judge Mannion, in his initial

3  opinion, deciding that a summons was appropriate, had some

4  dicta language suggesting that, perhaps, there wasn't enough

5  evidence in the Government's filings. What was this case about?

6  It looked like a horrific tragic accident. You'll note that in

7  footnote 40 of Judge Mannion's opinion of March 4, 2009

8  ordering extradition, he explained the tension between the

9  dicta, in his initial opinion, and the finding in this

10 opinion.

11      The fact that he changed his mind, after he heard argument

12 of Mrs. Harshbarger and the Government, does not, I would

13 submit, make it ipso facto, that, oh, there is a dispute here,

14 even in the mind of Magistrate Judge Mannion.

15      Also, the statement in his opinion of March 4, 2009 stating

16 that the Government's affidavits, which might fairly construe,

17 indicate that the Defendant's shot was neither grossly

18 negligent or reckless is taken out of context by Ms.

19 Harshbarger's counsel, because it continues;

20      "However, the burden at this stage is not proof beyond a

21 reasonable doubt but rather merely probable cause. Such

22 mitigating evidence does not wholly undermine the Government's

23 showing, in regard to mens rea. At most, it lays the basis for

24 a defense at trial."

25      Taken in context, that is Magistrate Judge Mannion's

1 opinion that the evidence is sufficient to show probable cause.

2 The Defendant may have a good defense at trial in Canada when

3 this case does come to trial.

4      The other argument made by the Defense, which was

5 previously made before Magistrate Judge Mannion is this straw

6 man argument that, well, she fired the shot with five minutes

7 to spare because hunting was permitted thirty minutes after

8 sunset in this Province of Canada. That's a straw man argument

9 because, Your Honor, I submit you could be guilty under

10 Canadian law, as well, you could be guilty under Pennsylvania

11 law of firing a shot at high noon on a sunny day that was done

12 in a grossly negligent or reckless manner to suffice for the

13 mens rea for involuntary manslaughter.

14      So I think while it's not negligence, per se, based on the

15 time the shot was fired, it's not exoneration, per se, or lack

16 of probable cause, per se, simply because the shot was fired

17 consistent with the law of the Province where the killing

18 occurred.

19      Getting to the hearsay issue, and you will see by the

20 Government's filing that we would maintain that Sylvester is

21 incorrectly decided. You will note, Your Honor, that Sylvester

22 was never appealed by the Government because the Government

23 never got an appealable order.

24      THE COURT: It wasn't an appealable order, yes.

25      MR. FISANICK: Not an appealable order. And we would submit

1   you're not bound by Sylvester, because it's not precedent,

2   clearly.

3        Here's why Sylvester doesn't really work for the Defendant.

4   If Pennsylvania has a plurality case that says if you're tried

5   of a crime in Pennsylvania, you have a procedural right to

6   confront witnesses against you; in other words, a Pennsylvania

7   preliminary hearing cannot be a paper hearing based solely on

8   affidavits. Somebody has to testify. That is a procedural

9   right. It is clear, under the United States Extradition Law

10  here in Federal Court that extradition proceedings are expected

11  to be paper hearings, because to hold otherwise would cause

12  detectives from foreign countries to be brought, in this case,

13  not very far, into the United States to testify, but it could

14  be from parts around the world to testify to, basically, what's

15  in affidavits. And conversely, United States detectives being

16  compelled to testify in other parts of the world.

17       So comity demands an orderly procedure that is done on

18  paper. Now, the fact that it's done on paper is not a bad thing

19  because, clearly, as Your Honor has pointed out, the statute

20  calls for under 3190 diplomatic process to certify these

21  documents to make sure they're accurate. What happens is, these

22  affidavits go before a United States Magistrate Judge, such as

23  Magistrate Judge Mannion, who is an expert in determining what

24  is probable cause and what is not. Because a United States

25  Federal Magistrate Judge, as part of his duties, looks at

1  Government search warrants, Government arrest warrants,

2  Government complaints, and determines probable cause based on

3  paper affidavits.

4      Pennsylvania procedural law -- and I would strenuously

5  argue this is not substantive law. The Defense here of Mrs.

6  Harshbarger is that, well, it's a substantive right under

7  Pennsylvania.

8      THE COURT: Well, in fact, there's a Pennsylvania statute

9  that would allow use of hearsay evidence, for purposes of

10 determining probable cause in child molestation cases, the

11 context in which Buchanan was decided. It wasn't in existence

12 when Buchanan was decided, but there have been subsequent

13 Appellate Court decisions in Pennsylvania that have said that

14 there's no problem with the confrontation clause in that

15 statute.

16     MR. FISANICK: Actually, to be honest, Your Honor, the U.S.

17 Supreme Court has never held that you have a right to confront

18 witnesses at a preliminary hearing or formally preliminary

19 examination, and I take that one step further. The Sixth

20 Amendment right to confrontation does not apply to this

21 proceeding in extradition, at all. So I find it curious that we

22 would be even considering denying the extraditability of Mrs.

23 Harshbarger, based on a parochial state case that grants a

24 right of confrontation under Pennsylvania law, not Federal law,

25 that would somehow supersede an entire body of U.S. Supreme

1 Court and Federal precedent which says;

2     Number one, you don't have a right to confrontation under

3 the Sixth Amendment to the U.S. Constitution in an extradition

4 hearing;

5     Number two, hearsay evidence is admissible;

6     Number three, it is expected that there would be no live

7 witnesses under the extradition practice in the United States;

8     Number four, hearsay evidence alone can stand to form the

9 basis of extraditability.

10     It all comes down to looking at what this procedure is, and

11 this procedure is a Federal procedure that is very

12 circumscribed and limited. In fact, until 3184 was adopted, I

13 wouldn't be here arguing on behalf of the Government of Canada

14 for extradition.

15     It sets forth in that section and the subsequent sections a

16 orderly sui generous actually informal process which

17 anticipates that if a foreign country such as Canada files a

18 criminal complaint against Mrs. Harshbarger for a charge that

19 looks like involuntary manslaughter under the laws of the

20 United States in our Federal system, and they swear out

21 affidavits and they swear out a criminal complaint and they

22 swear out a warrant, and the Government of the United States

23 and Canada get together through the diplomatic channels and

24 present the appropriate paperwork to a United States Attorney's

25 Office through my bosses in D.C. and a complaint is filed, and

1  the documents are introduced at a hearing and a United States

2  Magistrate Judge reviews those documents, much as he would

3  review affidavits for a search warrant and an arrest warrant

4  for violation of the United States Code, and he reviews them

5  and finds probable cause and orders extraditability of the

6  Defendant, I would submit to you, Your Honor, that's all the

7  process the Defendant is entitled to.

8      The Defendant is not entitled to a process that grafts on

9  Federal Constitutional principles, such as, confrontation,

10  exclusionary rule, right to exculpatory evidence, discovery, if

11  it doesn't do that, it certainly doesn't graft upon the process

12  of idiosyncratic Pennsylvania State Law Rule. So for those

13  reasons, Your Honor, unless you have any questions, I would ask

14  that this Court deny the Petition for Habeas Corpus and affirm

15  Magistrate Judge's order of extraditability and commitment.

16      THE COURT: Mr. Ackourey, any rebuttal?

17      MR. ACKOUREY: Your Honor, the only point that I would bring

18  out, again, is a fair reading of Buchanan indicates that the

19  substantive rights that we are talking about are not only

20  confrontational but due process rights as well, and I think

21  that's brought out.

22      THE COURT: And you think it was the intention of the two

23  sovereign governments, the Government of Canada and the

24  Government of the United States, that the right to extradite

25  would depend upon the laws of 50 different states?

1    MR. ACKOUREY: I do, Judge, and I say that, because, for

2  instance, in analyzing the contracting parties' language, it's

3  generally accepted that if there is not a corresponding Federal

4  crime, we go to the law of the state where the wanted person is

5  found.

6    THE COURT: But in this case there is a corresponding

7  Federal case.

8    MR. ACKOUREY: There is, in this case, but my point is that,

9  obviously, the parties there contemplated going beyond, merely,

10 comparing United States Federal law to Canadian law, they

11 anticipated that they would be going one step further to state

12 law, if required. I think, in light of the fact that in other

13 treaties that were mentioned, in the Greiche case, in

14 particular, where the United States and Italy renegotiated the

15 terms of what constitutes sufficient evidence. Removing the

16 same language that we face today and replacing it with

17 language, basically, saying why the law of the requested state

18 would determine what's sufficient, I find it hard to believe

19 that the United States and Canadian delegations in this

20 particular instance were unaware of that and were unable to see

21 that, in one instance, in the Italian treaty, there was a need

22 for this, but that they were unaware when negotiating the

23 protocols --

24    THE COURT: So you would think it would only be right, then,

25 that we have a Canadian here -- we have somebody in -- we have

1 a crime that's been committed here in the United States and the

2 person flees to Canada, that we've got to send our law

3 enforcement officers up there, in order to establish probable

4 cause?

5    MR. ACKOUREY: If the law of the Province where he is

6 requires that. Now, what I'm saying, Judge, is, what I'm saying

7 is that the statutory framework says we look to the language of

8 the treaty. So your hypothetical where the person is at the

9 Delaware Water Gap, if probable cause can be established

10 through hearsay in the Federal process, there's no problem. If

11 the law of California allows hearsay to establish probable

12 cause, I mean, the person wanted is in California, no problem.

13    But here, in Pennsylvania, where we are going to apply the

14 law at the place where the individual is found, if hearsay is

15 not substantial evidence or competent evidence in this

16 particular case, then, it's not acceptable. And I think that's

17 exactly what Sylvester says.

18    THE COURT: But, again, if Mrs. Harshbarger had been

19 accused -- had this occurrence happened in the Delaware Water

20 Gap on Federal property and she had been accused of violating

21 the Federal manslaughter statute, hearsay would be sufficient

22 to hold her over for trial.

23    MR. ACKOUREY: Under the treaty, I believe you're correct.

24    THE COURT: All right, anything else?

25    MR. FISANICK: No, Your Honor.

23

1    THE COURT: All right. I'm going to recess for 15 minutes.

2    (At this time a recess was taken.)

3    THE COURT: All right, well, very interesting arguments have

4  been presented, and some may say somewhat ingenious arguments,

5  as well. I'm going to take the matter under advisement to study

6  the matter a little more closely than the opportunity that I

7  have had for the nine days that the case was in front of me.

8    The question I have, then, is the status of Mrs.

9  Harshbarger pending my decision. She is scheduled to surrender

10 on Friday of this week to the United States Marshals.

11   MR. FISANICK: Looking to me first, Your Honor, the United

12 States would say that 3184 compels her to surrender, since a

13 certificate of extraditability has been issued in this case.

14   MR. ACKOUREY: Judge, in response, I would point the Court

15 to Judge Mannion's opinion where he cites Wright v. Hinkle,

16 United States v. Williams for the proposition that bail extends

17 to pre and post-extradition hearing phases. It indicates -- he

18 indicates in footnote no. 6 that the treatise states that even

19 after reaching a finding of extraditability, a Magistrate Judge

20 may grant continued bail, and he cites Michael Abell,

21 extradition to and from the United States. I would ask that the

22 Court issue bail in this matter and allow her to remain on bail

23 until such time as a determination is made with regard to the

24 writ.

25   THE COURT: I understand the importance of these matters, in

1  terms of diplomatic relations, and I also understand, and I

2  will take this into consideration in issuing my decision in

3  this matter, that extradition is a two-way street, so we have

4  to be concerned about making sure that we don't make

5  extradition so cumbersome that it cannot be used by us when we

6  need to use it for people that have committed crimes against

7  the United States from outside our jurisdiction.

8      There is authority that does recognize the right to bail

9  under these particular circumstances. They emphasize that bail

10  should be granted with great circumspection, and they consider

11  a couple factors.

12      One is the urgency of the matter. And by the urgency of the

13  matter, they generally refer to the importance of the interests

14  at stake. So, for example, in a terrorism case, the interest in

15  making sure that the person is available would be substantial

16  and would militate against bail. This is a prosecution for

17  causing death by criminal negligence, it is not of that nature.

18  They also say that there should be exceptional circumstances,

19  and I view the fact that Mrs. Harshbarger has two young

20  children to be an exceptional circumstance that warrants bail

21  only for the period of time under which I have this matter

22  under consideration.

23      I do want to look at it more carefully, in light of the

24  arguments that have been made here today, so I'm not indicating

25  that I would grant bail beyond the period of time it takes me

1   to decide this matter, and I don't intend to take much time to

2   decide this matter, I want you to be aware of that. I had

3   indicated that I may have ruled today from the bench, but I do

4   want to write an opinion in this matter, and I think it would

5   be better if I were to take my time to do that.

6        So having said that, I will find exceptional circumstances

7   that do allow for bail, here. I do believe, and I found the

8   decision from Judge Learned Hand when he was a District Judge

9   that he imposed conditions on bail, and I would be inclined to

10  impose conditions on bail. And, in particular, that I would

11  require posting bail in the amount of $100,000 in this

12  particular matter so as to assure that when it comes time for

13  Mrs. Harshbarger to turn herself in, that there is some

14  security for that eventuality happening.

15       I do note that it is commendable that she is present here

16  in court. There has been no indication of an intention on her

17  part to flee, but on the other hand, there would be substantial

18  concerns on the part of the Canadian Government, so I think

19  that by Friday of this week, she needs to post a bail bond or

20  in the event that she does not, that she be subject to

21  surrendering to the United States Marshals Office, all right.

22       MR. FISANICK: One more matter before we go, Your Honor.

23  The Government would move to be excused from responding to the

24  declaratory judgment and injunctive request under the filing by

25  Ms. Harshbarger. We believe it was inappropriate and would

26

1  ultimately be subject to a Motion to Dismiss, but pending your

2  decision on the habeas, we don't want to be placed in a

3  position of my having to answer for Mr. Holder, Ms. Clinton and

4  Ms. Torres and Mr. Regan.

5      THE COURT: Any objection, Paul?

6      MR. ACKOUREY: No.

7      THE COURT: There is no need to respond.

8      MR. ACKOUREY: Judge, what time would she need to report, in

9  the event bail is not posted?

10      THE COURT: In the event bail is not posted, by 2 p.m. on

11  Friday. All right.

12      MR. ACKOUREY: Thank you.

13      MR. FISANICK: Thank you, Your Honor.

14      (At this time the proceedings were adjourned.)

15

16

17

18

19

20

21

22

23

24

25

27

# C E R T I F I C A T E

1

2

3        I, KRISTIN L. YEAGER, Official Court Reporter for the

4   United States District Court for the Middle District of

5   Pennsylvania, appointed pursuant to the provisions of

6   Title 28, United States Code, Section 753, do hereby certify

7   that the foregoing is a true and correct transcript of the

8   within-mentioned proceedings had in the above-mentioned and

9   numbered cause on the date or dates hereinbefore set forth; and

10  I do further certify that the foregoing transcript has

11  been prepared by me or under my supervision.

12

13                              S/Kristin L. Yeager
                                KRISTIN L. YEAGER, RMR,CRR
14                              Official Court Reporter

15
    REPORTED BY:
16
        KRISTIN L. YEAGER, RMR,CRR
17      Official Court Reporter
        United States District Court
18      Middle District of Pennsylvania
        P.O. Box 5
19      Scranton, Pennsylvania  18501

20

21

22        (The foregoing certificate of this transcript
    does not apply to any reproduction of the same by any means
23  unless under the direct control and/or supervision of the
    certifying reporter.)

24

25