IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARY BETH HARSHBARGER,                    :
                        Petitioner        :
                                          :
        v.                                :        3:09-CV-00487
                                          :        (JUDGE VANASKIE)
MICHAEL REGAN, United States Marshal      :
for the Middle District of Pennsylvania,  :
et al.,                                   :
                        Respondents       :

MEMORANDUM

     This habeas corpus petition continues Petitioner Mary Beth Harshbarger's challenge to

her extradition to Canada, where she has been charged with the reckless killing of her husband

while on a hunting trip in Canada.  Petitioner asserts violations of the Due Process and the

Equal Protection clauses of the Fifth and Fourteenth Amendments of the United States

Constitution.  (Petition, Dkt. Entry 1.)[1]  In particular, she contends that (a) extradition cannot be

based solely upon hearsay, i.e., affidavits of Canadian law enforcement officers; (b) the

hearsay evidence, in any event, was insufficient to support a finding of probable cause to

believe that her conduct amounted to criminal negligence causing death; and (c) the Canadian

criminal offense upon which her extradition is premised is unconstitutionally vague.  (Id.)  For

---

[1]For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted.  No endorsement of any provider of electronic resources is intended by the Court's practice of using hyperlinks.

the reasons that follow, the petition will be denied.

I.  BACKGROUND

In September of 2006, Mary Beth Harshbarger, her husband Mark Harshbarger, and their children Myra (age four) and Elijah Meas (age six months) traveled from Pennsylvania to the Moosehead Hunting Lodge near the town of Buchans Junction, Newfoundland and Labrador, Canada, for a one week trip to hunt moose, caribou, and bear.  (Petition, ¶ 8.)  Mark Harshbarger's brother, Barry Harshbarger, accompanied them on the trip.  (Id.)  They hired Lambert Greene, a Canadian hunting guide.  (Id.; Dawson Aff. at 08-mj-00109, Dkt. Entry 4, at 9.)[2]

While hunting in the evening of September 14, 2006, Mark Harshbarger and Mr. Greene left to walk in the brush searching for moose, leaving Ms. Harshbarger in a pickup truck with the two children.  (Dawson Aff. at 08-mj-00109, Dkt. Entry 4, at 9.)  Ms. Harshbarger was to stay with the truck and if a moose or bear presented itself, she was to shoot it.  (Greene Aff. at 08-mj-00109, Dkt. Entry 4, at 37.)  At approximately 7:55 p.m., when Mark Harshbarger was walking back to the truck and was approximately 200 feet away,[3] Ms. Harshbarger mistakenly

---

[2] References to the record will be to the document number and pagination generated by our Court's electronic case filing system ("CM/ECF") listed at the top of each page of the cited document, rather than to the exhibit number or transcript page used by the parties.

[3] Mr. Greene had separated from Mark Harshbarger in order to urinate.  (Dawson Aff. at 08-mj-00109, Dkt. Entry 4, at 37.)

took her husband for a bear emerging from the brush, and fired a shot from her rifle killing him.[4] (Petition, ¶ 9.)  The brush was about five feet high where Mark Harshbarger was shot.  (Hewitt Aff. at 08-mj-00109, Dkt. Entry 4, at 30.)  He was wearing a navy blue sweatshirt and bibbed blue jeans.  (Id.)  Ms. Harshbarger was standing in the back of the pickup truck, with her two children in the cab, when she fired the fatal shot.  Ms. Harshbarger admitted that she had been distracted by her children and had lost sight of her husband and Mr. Greene after they had entered the bush.  Examination of the scene after the shooting did not reveal any prints of bears or any large animal in the soft ground where her husband was killed.  (Dawson Aff. at 08-mj-00109, Dkt. Entry 4, at 10.)

Canadian regulations allow hunting until 30 minutes after sunset.  Sundown on the day of this incident occurred at 7:31 p.m., about 25 minutes before Ms. Harshbarger fired the fatal shot.  (Id. at ¶ 13.)  After conducting two re-enactments of the incident on September 16, 2006, and September 13, 2007, Canadian law enforcement officials concluded that it was not probable that Ms. Harshbarger could have definitively identified the black mass she had observed as a bear, while finding it plausible that "she may have felt that she was shooting at a bear."  (Hewitt Aff. at 08-mj-00109, Dkt. Entry 4, at 32.)  They also concluded that "the lighting conditions were too dark to have fired a shot," (id.), and that "it was too dark to hunt safely at

---

[4]She described the bear "as a big black thing."  She observed the "black thing" for several minutes, and told law enforcement officers that it appeared to be "low to the ground and rounded."  (Hewitt Aff. at 08-mj-00109, Dkt. Entry 4, at 30.)

7:55 p.m." (Dawson Aff. at 08-mj-00109, Dkt. Entry 4, at 10.)

On April 20, 2008, an information was sworn by Canadian authorities charging Ms. Harshbarger with criminal negligence causing death and carelessly using a firearm or ammunition in violation of Sections 86(1), 219(1) and 220(a) of the Criminal Code of Canada.[5] (Petition at ¶ 12; Warrant for Arrest at 08-mj-00109, Dkt. Entry 4, at 21.) The Canadian government then contacted the United States Department of State and requested extradition. (Petition at ¶ 12.)

The extradition treaty with Canada provides for extradition under the so-called "dual

_____

[5]The cited sections of the Criminal Code of Canada provide:

86.(1) Careless use of firearm, etc.– Every person commits an offence who, without lawful excuse, uses, carries, handles, ships, transports or stores a firearm, a prohibited weapon, a restricted weapon, a prohibited device or any ammunition or prohibited ammunition in a careless manner or without reasonable precautions for the safety of other persons.
. . .

219.(1) Criminal negligence - Every one is criminally negligent who (a) in doing anything, or (b) in omitting to do anything that it is his duty to do, shows wanton or reckless disregard for the lives or safety of others.
. . .

220. Causing death by criminal negligence - Every person who by criminal negligence causes death to another person is guilty of an indictable offence and liable (a) where a firearm is used in the commission of the offence, to imprisonment for life and to a minimum punishment of imprisonment for a term of four years; (b) in any other case, to imprisonment for life.

(Dawson Aff. at 08-mj-00109, Dkt. Entry 4, at 11.)

4

criminality" standard, i.e., "[e]xtradition shall be granted for conduct which constitutes an

offense punishable by the laws of both Contracting Parties by imprisonment or other form of

detention for a term exceeding one year or any greater punishment."  Treaty on Extradition,

U.S.-Canada, First Protocol, Art. 1, T.I.A.S. No. 8237.  The parties agree that the federal crime

of manslaughter, codified at 18 U.S.C. § 1112, provides an offense punishable by the laws of

the United States that is comparable to the crime of criminal negligence causing death, of which

Petitioner stands accused in Canada.[6]

On February 13, 2009, an evidentiary hearing was held by United States Magistrate

Judge Malachy E. Mannion pursuant to 18 U.S.C. § 3184.[7]  On March 4, 2009, Magistrate

---

[6]18 U.S.C. § 1112, the coordinate criminal statute to Sections 219(1) and 220 of the Canadian Criminal Code, provides:

(a)  Manslaughter is the unlawful killing of a human being without malice.  It is of two kinds: . . . Involuntary–In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

[7]Extradition treaties between the United States and foreign governments are governed by 18 U.S.C. § 3184, which, in pertinent part, provides:

Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, that he may be brought before such

Judge Mannion issued a Memorandum and Order in which he found there to be probable cause to believe that Ms. Harshbarger committed the crime of manslaughter under United States law as set forth in 18 U.S.C. § 1112.  As to the charge of careless use of a firearm under section 86 of the Canadian Criminal Code, the Magistrate Judge found corresponding offenses under Pennsylvania state law (34 Pa. Cons. Stat. § 2522(a) and 18 Pa. Cons. Stat. § 2705), but concluded that extradition for this offense could not proceed because the Pennsylvania statute of limitations on such an offense had expired at the time that the extradition proceedings were commenced in this Court.  (Mem. & Ord. at 08-mj-00109, Dkt. Entry 19, at 20.)

Ms. Harshbarger was ordered to surrender herself to the custody of the United States Marshal on March 13, 2009, pending further disposition by the United States Secretary of State.  (Mem. & Ord. at 08-mj-00109, Dkt. Entry 19, at 27.)  Ms. Harshbarger then filed an Emergency Motion to Stay Certification and Order of Commitment so she could file a habeas corpus petition.  (Mot. Stay at 08-mj-00109, Dkt. Entry 21.)  Magistrate Judge Mannion denied

---

justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered. . . .  If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

the stay, but extended Ms. Harshbarger's surrender date to March 20, 2009.  (Ct. Order of 08-mj-00109, Dkt. Entry 28.)

On March 16, 2009, Petitioner filed the presently pending Emergency Petition for Writ of Habeas Corpus.  (Dkt. Entry 1.) The extradition order was then stayed until March 27, 2009, in order to hear oral argument on the motion.  (Dkt. Entry 5.)  Oral argument was conducted on March 25, 2009, following which the Court permitted Petitioner to be released on bail pending a decision on the issues presented in this matter.  (Tr., Dkt. Entry 14.)

## II.  DISCUSSION

### A.  General Principles

The role of the judiciary in the extradition process was reviewed recently in Hoxha v. Levi, 465 F.3d 554, 560 (3d Cir. 2006):

> Extradition is an executive rather than a judicial function. Sidali v. INS, 107 F.3d 191, 194 (3d Cir.1997). For this reason, a court may conduct only a limited inquiry following a complaint seeking extradition. Id. In an extradition hearing, the court decides whether the defendant is subject to surrender to the requesting government, a determination that requires a finding as to whether probable cause supports the charges against the defendant. Id. at 194-95; see also 18 U.S.C. § 3184 (stating that upon a complaint for extradition, a court may consider whether the evidence is "sufficient to sustain the charge under the provisions of the proper treaty or convention"). If probable cause is satisfied, the judge makes a finding of extraditability, and the case is certified to the Secretary of State for further action. Sidali, 107 F.3d at 195.
>
> An individual challenging a court's extradition order may not appeal directly, because the order does not constitute a final decision under 28 U.S.C. § 1291, but may petition for a writ of habeas corpus. Sidali, 107 F.3d at 195. On habeas, a reviewing court may consider only " 'whether the magistrate [judge] had

jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.' " Id. (quoting Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925)).

In this case, Petitioner does not contest the jurisdiction of the magistrate judge.  Nor does she dispute the fact that the offense with which she is charged falls within the extradition treaty.  Her challenge is limited to the question of whether there was sufficient competent evidence presented to the magistrate judge to support his probable cause determination.

Our Court of Appeals has observed that "the probable cause standard applicable in extradition proceedings is identical to that used by courts in federal preliminary hearings." Sidali v. I.N.S., 107 F.3d 191, 199 (3d Cir. 1997).  "The probable cause standard applicable in extradition proceedings has been described as 'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" Id.; In re Extradition Ortiz, 444 F. Supp. 2d 876, 883-884 (N. D. Ill. 2006) (citing Eain v. Wilkes, 641 F.2d 504, 508 (7th Cir. 1981)); Sandhu v. Burke, No. 97 Civ. 4608(JGK), 2000 WL 191707, at *5 (S.D.N.Y. Feb. 10, 2000) ("'The probable cause standard applicable in extradition proceedings is defined in accordance with federal law and has been described as 'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" (citing United States v. Wiebe, 733 F.2d 549, 553 (8th Cir.1984)); Matter of Extradition of Marzook, 924 F. Supp. 565, 573 (S.D.N.Y. 1996).

A magistrate judge's probable cause finding must be upheld "if there is any competent

evidence in the record to support it." Sidali, 107 F.3d at 195-196; see also Then v. Melendez, 92 F.3d 851, 854 (9th Cir. 1996) ("Our review of the sufficiency of the evidence in a habeas corpus proceeding is limited; we must uphold the magistrate's probable cause finding if there is any competent evidence in the record to support it."); Furthermore, "a magistrate judge's decision to admit or exclude evidence in an extradition proceeding [is reviewed ] for abuse of discretion." Hoxha, 465 F.3d at 560.

    B.  Use of Hearsay Evidence to Establish Probable Cause

      For more than 125 years Congress has provided that properly authenticated "[d]epositions, warrants, or other papers . . . offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence. . . for all the purposes of such hearing." 18 U.S.C. § 3190.  See Act of August 3, 1882, § 5, 22 Stat. 215-16.  Thus, it has long been regarded that hearsay is properly considered at extradition proceedings.  See, e.g., Bingham v. Bradley, 241 U.S. 511, 517 (1916) (hearsay is competent evidence in extradition sought by Canada); O'Brien v. Rozman, 554 F.2d 780, 783 (6th Cir. 1977) (hearsay evidence is admissible in extradition proceeding brought by Canada); United States v. Samuels, No. 08-MJ-445 (RLM), 2009 WL 367578, at *7 (E.D.N.Y. Feb. 10, 2009) (in extradition proceeding brought by Canada, court observed that "'[h]earsay statements of witnesses summarized in the affidavit of a foreign official are admissible and may be sufficient to warrant a finding of probable cause . . . .'").

Notwithstanding this hoary principle of law applicable in extradition proceedings, Petitioner argues that hearsay cannot be used to establish probable cause in her case. Petitioner's argument is based upon the language in Article 10(1) of the extradition treaty between the United States and Canada, along with a recent interpretation of that language by my esteemed colleague, the Hon. John E. Jones, III, in In re United States Extradition of Sylvester, No. 4:Cr 05-0490, Dkt. Entry 10  (M.D. Pa. Feb. 14, 2006).

Article 10(1) of the U.S.-Canada extradition treaty provides:

> Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial if the offense of which he is accused had been committed in its territory or to prove that he is the identical person convicted by the courts of the requesting State. [Emphasis added.][8]

Petitioner claims that the magistrate judge's determination of probable cause based on affidavits of Canadian law enforcement officers does not accord with the laws of the Commonwealth of Pennsylvania, where she was arrested.  (Petition, Dkt. Entry 1, at 8.)

---

[8]Article 8 of the Treaty provides: "The determination that extradition should or should not be granted shall be made in accordance with the law of the requested State and the person whose extradition is sought shall have the right to use all remedies and recourses provided by such law."  (Emphasis added.)  Use of the probable cause standard applied by courts in federal preliminary hearings, i.e., "the law of the requested state," is consistent with Article 8.  Hearsay, of course, may be considered in a federal court preliminary hearing.  See United States v. Reyna-Tapia, 328 F.3d 1114, 1120 n.5 (9th Cir. 2003); United States v. Kin-Hong, 110 F.3d 103, 120 (1st Cir. 1997).  At oral argument, counsel for Petitioner suggested that this article concerns only the definition of probable cause and not the character of the evidence that may be considered in extradition proceedings.  (Tr., Dkt. Entry 14, at 11.)

10

Although conceding the admissibility of the affidavits upon which the magistrate judge relied, (Oral Arg. Tr. at 3), Petitioner argues that the substantive information found in the affidavits cannot be considered.  As noted above, she relies on In re United States Extradition of Sylvester, No. 4:Cr 05-0490, Dkt. Entry 10, in which Judge Jones denied the Government's request to extradite Mr. Sylvester to Canada because, among other reasons, only hearsay evidence was presented at the extradition hearing, which Judge Jones found was not competent evidence to support a finding of probable cause under a plurality decision of the Supreme Court of Pennsylvania in Commonwealth v. Buchanan, 581 A.2d 172 (Pa. 1990).[9]

The shortcoming of Judge Jones's opinion in Sylvester, and the fatal flaw in Petitioner's argument, is that neither takes into consideration either (a) the federal statute pertaining to the admissibility of hearsay evidence in extradition proceedings, or (b) a decision of the United States Supreme Court that acknowledges the supremacy of this federal statute with respect to the competence of hearsay evidence in extradition proceedings involving Canada.  The statute and case law applying it compel the conclusion that the magistrate judge did not err in relying upon the affidavits of Canadian law enforcement officials in finding probable cause here.

First, Petitioner's argument cannot be reconciled with 18 U.S.C. § 3190, which explicitly

---

[9]The court also rejected the Government's request for extradition because the statute of limitations that would have applied to the state law offense that was comparable to the Canadian charge had expired.  Given this conclusion, it was unnecessary for Judge Jones to address the competence of the evidence presented by the Government.

allows for the use of hearsay "as evidence . . . <u>for all the purposes</u> of such [extradition]

hearing." (Emphasis added.) Consistent with this statutory authorization, it has been

recognized that:

> a prosecutor's or an officer's summary of hearsay statements by affidavit is competent evidence sufficient for a finding of extraditability as long as the affidavit is authenticated. <u>See</u> <u>Emami v. United States Dist. Ct. for the N. Dist. of Cal.</u>, 834 F.2d 1444, 1451 (9th Cir.1987); <u>see also</u> <u>In re Marzook</u>, 924 F. Supp. at 592 (refusing to entertain objections to "multiple hearsay"). Likewise, unless the extradition treaty requires that witnesses' statements be made under oath, the hearsay statements to which the affiant refers need not have been made under oath or after receiving warnings of consequences for giving a false statement. <u>Emami</u>, 834 F.2d at 1452; <u>see also</u> <u>Zanazanian v. United States</u>, 729 F.2d 624, 627 (9th Cir.1984) (where (1) a police officer's report summarizing hearsay statements was properly authenticated, (2) the report was prepared on the basis of notes from recorded interrogations, and (3) the witnesses had approved either the tape or the notes, the court found the report both admissible and reliable as the statements had indicia of reliability (such as statements against penal interest)); <u>Bovio v. United States</u>, 989 F.2d 255, 259-60 (7th Cir.1993) (finding that a witness's statement was sufficiently corroborated but noting that the extraditee "had no right to attack the credibility of [a witness since] issues of credibility are to be determined at trial," and, therefore, the court refused to entertain further objections to a witness statement even though the statement was made five years after the investigation and there was no record of original notes from witness interviews).

<u>In re Ntakirutimana</u>, No. CIV. A. L-98-43, 1998 WL 655708, at *24 (S.D. Tex. Aug. 6, 1998).

Because properly authenticated documents may be admitted as evidence "for all

purposes" at an extradition hearing, it necessarily follows that the affidavits of the Canadian law

enforcement officers may form the predicate for a probable cause finding. Indeed, the

Supreme Court of the United States reached this conclusion nearly one century ago. In

Bingham v. Bradley, 241 U.S. 511 (1916), Canada sought to extradite the habeas petitioner, who was found in the state of Illinois.  The Canadian offense of which the habeas petitioner was accused had an Illinois state law counterpart.  The extradition treaty, like the treaty at issue here, provided for extradition only "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offense had there been committed."  Id. at 517.  Relying upon the Act of August 3, 1882, 22 Stat. 215-16, the predecessor statute to 18 U.S.C. § 3190, see 18 U.S.C.A. § 3190, Historical and Statutory Notes, the Court held that the affidavits authenticated by the Canadian officials sufficed to support the extradition.  Referring to the Act of August 3, 1882, the Court explained:

> It is one of the objects of [this statute] to obviate the necessity of confronting the accused with the witnesses against him; and a construction of this section, or of the treaty, that would require the demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty.

Bingham, 241 U.S. at 517.

In Collins v. Loisel, 259 U.S. 309 (1922), Justice Brandeis wrote that an extradition treaty's reference to evidence of criminality according to the law of the place where the accused is found did "not refer to the character of specific instruments of evidence or to the rules governing admissibility." Id. at 317.  Instead, the reference concerned the "elements essential to a conviction." Id.  Accordingly, explained Justice Brandeis "unsworn statements of absent

13

witnesses <u>may be acted upon by the committing magistrate, although they could not have been received by him under the law of the state on a preliminary examination</u>." <u>Id.</u> (emphasis added).  To emphasize this point, Justice Brandeis declared that "whether there is a variance between the evidence and the complaint is to be decided by the <u>general law and not by that of the state</u>." <u>Id.</u> (emphasis added).

The rationale of Justice Brandeis in <u>Collins</u> compels the conclusion that hearsay evidence is sufficient to support a finding of probable cause for extradition purposes, even though hearsay may not be sufficient to bind a person over for trial according to the law of the state where the person is found.  Petitioner's argument that affidavits are admissible, but cannot supplant a state law requirement that only non-hearsay may be considered in determining whether a person should be held for trial, "savor[s] of technicality," <u>Bingham</u>, 241 U.S. at 517, and "[c]ourts have long been unsympathetic to objections to extradition which "savor of technicality."  <u>In re: Rodriguez Ortiz</u>, 444 F. Supp. 2d 876, 883 (N.D. Ill. 2006).

In <u>Shapiro v. Ferrandina</u>, 478 F.2d 894, 901 (2d Cir. 1973), Chief Judge Friendly rejected an argument presented in a context indistinguishable from that presented here. The petitioner argued that New York state law barred the use of hearsay evidence in an extradition proceeding to support a probable cause finding.  Specifically, the petitioner relied upon New York Criminal Procedure Law § 180.60, subd. 8, which provided that "only non-hearsay evidence is admissible to demonstrate reasonable cause to believe that the defendant

14

committed a felony" at a preliminary hearing on state law charges.  Id. at 901.  Since the

magistrate judge relied solely on written statements and records of testimony of persons not

before him and not subject to cross-examination, the petitioner argued that the magistrate judge

erred in finding probable cause.  (Id.)  As in this case, the extradition treaty at issue in Shapiro

provided that "[e]xtradition shall be granted only if the evidence be found sufficient, according to

the laws of the place where the person sought shall be found, . . . to justify his committal for

trial."  Id.  Chief Judge Friendly, relying on Pettit v. Walshe, 194 U.S. 205, 217 (1904),

concluded that "the phrase 'the laws of the place where the person sought shall be found' refers

to the law of the state where the arrest occurs rather than to the laws of the United States."[10]

Thus, Chief Judge Friendly found that New York law applied because Mr. Shapiro was arrested

there.[11]

---

[10]Citing Pettit v. Walshe, Chief Judge Friendly reasoned:

[A]s there are no common-law crimes of the United States, and as the crime of
murder, as such, is not known to the national government, except in places over
which it may exercise exclusive jurisdiction, the better construction of the treaty is
that the required evidence as to the criminality of the charge against the accused
must be such as would authorize his apprehension and commitment for trial in
that state of the Union in which he is arrested.

Shapiro, 478 F.2d at 901 n.4.

[11]It is generally recognized that, unless the treaty indicates otherwise, state law applies
to extradition matters.  Greci v. Birknes, 527 F.2d 956, 958 (1st Cir. 1976) ("Treaties on
extradition have commonly been interpreted as adopting state standards governing the
sufficiency of evidence to justify committal for trial, on the ground that most extraditable
offences were known only to state law."); In re Extradition Williams, 469 F. Supp. 16, 17 (S.D.

Chief Judge Friendly then found, however, that the New York rule that only non-hearsay evidence can support a determination to bind a person for trial on a felony charge did <u>not</u> apply. Observing that the petitioner's argument could not be reconciled with Justice Brandeis' opinion in <u>Collins</u> or with 18 U.S.C. § 3190, Chief Judge Friendly wrote:

> Shapiro's able counsel says "[his] argument does not, of course, go to admissibility or competence; it relates to sufficiency." We fail to see any basis for this characterization. The New York statute on which he relies itself speaks in terms of "admissible" evidence to demonstrate reasonable cause in a felony hearing; a prior section defining "reasonable cause," N.Y.Crim.Proc.L. § 70.10, subd. 2, expressly provides that in general "apparently reliable evidence may include or consist of hearsay." The recent addition to § 180.60, subd. 8 barring use of hearsay evidence in preliminary hearings in felony cases thus is not a matter of sufficiency, which is independently defined, but rather a restriction on the kind of evidence in hearings relating to particularly serious crimes. <u>In extradition hearings, see Collins v. Loisel, supra, this is precisely the sort of issue to be determined by national rather than by state law.</u>

<u>Shapiro</u>, 478 F.2d at 902 (emphasis added).  Chief Judge Friendly aptly noted that "the principle [Mr.] Shapiro asks us to adopt would run counter to one of the prime objects of bi-lateral extradition agreements, namely, 'to obviate the necessity of confronting the accused with the witnesses against him; . . . [requiring] the demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty.'" <u>Id.</u>

In <u>Romeo v. Roache</u>, 820 F.2d 540, 545 (1st Cir. 1987) (per curiam), the court also

---

N.Y. 1977) (Article 10(1) of the United States-Canada extradition treaty refers to the law of the state); <u>Matter of Extradition of Schweidenback</u>, 3 F. Supp.2d 113, 115 (D. Mass. 1998).  <u>But see In re: Extradition of Batchelder</u>, 494 F. Supp. 2d 1302, 1306 (N.D. Fla. 2007) (federal, not state, law applies in extradition sought by Canada).

confronted the same argument presented here.  The petitioner, facing extradition to Canada under the United States-Canada extradition treaty, argued that Massachusetts law precluded hearsay evidence to support a committal for trial.  He thus contended that the district court's finding that there was sufficient evidence of probable cause, based on affidavits, was in error. The court first interpreted Article 10(1) of the treaty and found that Massachusetts law – the state where the petitioner was found – should be applied.  Id. at 545.  Agreeing with Shapiro, the court then concluded that, notwithstanding the limitations on use of hearsay in Massachusetts tribunals, hearsay evidence could be relied upon to find probable cause in an extradition proceeding.  Id.; accord United States ex rel. Sakaguchi v. Kaulukukui, 520 F.2d 726, 730-731 (9th Cir. 1975).

The reasoning of Judge Friendly, adopted by the First and Ninth Circuits, compels the same conclusion in this matter.  Judge Jones in Sylvester did not cite Bingham, Collins, or these compelling appellate court precedents.  Nor does his opinion address the import of 18 U.S.C. § 3190 or the implication on enforcement of bilateral treaty obligations if the law of fifty states would need to be considered when determining the character of the evidence that may be considered in determining probable cause for extradition purposes.  See Quinn v. Robinson, 783 F.2d 776, 815 -816 (9th Cir. 1986) ("Barring hearsay from extradition proceedings would thwart one of the objectives of bilateral extradition treaties by requiring the requesting nation to send its citizens to the extraditing country to confront the accused.").  For these reasons, I find

17

his ruling in <u>Sylvester</u> unpersuasive.[12]  Consistent with <u>Bingham</u>, <u>Collins</u>, and <u>Shapiro</u>, I

conclude that hearsay evidence is sufficient to support a finding of probable cause to extradite

to Canada a person found in Pennsylvania.

## C.  The Magistrate Judge's Probable Cause Determination

The magistrate judge relied on the following evidence in determining that the

Government had established probable cause (all taken from affidavits of Constable Doug

Hewitt, Stephen R. Dawson--Senior Crown Attorney (Acting) at the Special Prosecutions Office

in the Provincial Department of Justice, and Lambert Green).

> 1. The fact that the defendant was aware her husband was in the
> bush at the time she took the fatal shot;
>
> 2. The defendant's admission to the Canadian authorities that she
> "should not have fired the shot";
>
> 3. Statements by Canadian investigators to the effect that they
> would not have taken the fatal shot under all the attendant
> circumstances;
>
> 4. The fact that she took the fatal shot after sunset, notwithstanding
> the fact that shooting at that time was not, in itself, a violation of
> law or negligence per se;
>
> 5. The fact that her husband, with whom she was traveling, was not

---

[12]<u>Sylvester</u> is also distinguishable.  Unlike the matter <u>sub judice</u>, <u>Sylvester</u> did not
involve a federal criminal statute that was a counterpart to the Canadian charge.  In this case, it
is clear that hearsay evidence could be used in a federal court preliminary hearing to hold the
accused for trial.  <u>See</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1120 n.5 (9th Cir. 2003);
<u>United States v. Kin-Hong</u>, 110 F.3d 103, 120 (1st Cir. 1997).

wearing orange hunting clothes;

6. The fact that any number of Canadian investigators reenacting the alleged crime saw an ambiguous black mass, from which one might fairly infer that the defendant took her shot notwithstanding that the identity of what she saw was ambiguous even as to her;

7. The fact that despite defendant's claims that she saw or thought she saw a bear, no bear tracks were found by the Canadian investigator on the scene, although human footprints were visible on the ground;

and,

8. The fact that the defendant was – apparently – a competent, if not excellent, shot even at a distance, who had, in fact, killed a caribou during the course of the same hunting trip, from which one might reasonably infer that she knew the consequences of firing her gun could be fatal to a human being.

It is clear that the Magistrate Judge had an ample foundation for finding probable cause. The eight points mentioned above, although not conclusive proof that Ms. Harshbarger will be convicted, are enough to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of her guilt of reckless conduct causing death. See Sidali, 107 F.3d at 199. Ms. Harshbarger knew her husband had entered the bush and had disappeared from her sight. She knew he was wearing dark clothing. She knew the lighting conditions were poor. Witnesses who reenacted the event concluded that they could not identify with certainty a "dark mass" in the vicinity where Ms. Harshbarger shot her husband. These facts are derived from the evidence presented to Magistrate Judge Mannion, and are sufficient to support his

probable cause finding.  The narrow scope of review applicable in this habeas proceeding

precludes me from contradicting Magistrate Judge Mannion's well-reasoned determination.  Id.

at 200.

III.  CONCLUSION

For the reasons stated in the foregoing memorandum, Petitioner's Motion for Habeas

Corpus relief will be denied.[13]  An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

---

[13] Petitioner's argument that, as applied to her, the criminal statutes upon which her extradition is based are unconstitutionally vague merely re-casts her challenge to the sufficiency of the evidence.  In this regard, she has not cited any authority to support her void-for-vagueness position.  Moreover, the fact that her conduct did not violate Canadian hunting regulations does not mean that she could not be found guilty of acting recklessly.  In any event, any defense as to the vagueness of the Canadian statute as applied to the Petitioner is not to be decided by the courts of the United States.  It is sufficient that there is probable cause to find that her actions violate the federal involuntary manslaughter statute.  See Desautels v. United States, 782 F. Supp. 942, 943-944 (D. Vt. 1991) (rejecting vagueness challenge to provision of Canadian Criminal Code where evidence supported probable cause to believe accused committed offense under coordinate United States law).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY BETH HARSHBARGER, | : | |
| Petitioner | : | |
| | : | |
| v. | : | 3:09-CV-00487 |
| | : | (JUDGE VANASKIE) |
| MICHAEL REGAN, United States Marshal | : | |
| for the Middle District of Pennsylvania, | : | |
| et al., | : | |
| Respondents | : | |

ORDER

NOW, THIS 13th DAY OF APRIL, 2009, for the reasons set forth in the foregoing

memorandum, IT IS HEREBY ORDERED THAT:

1. The Petition for Writ of Habeas Corpus (Dkt. Entry 1) is DENIED.

2. Petitioner is ordered to surrender herself, on or before 3:00 p.m., on Friday, April 27,

2009, to the United States Marshal's Office in the William J, Nealon United States Courthouse

and Federal Building, Scranton, Pennsylvania.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge