IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY BETH HARSHBARGER, | : | CIVIL ACTION |
| | : | |
| PETITIONER | : | NO.: 3:09-CV-00487 |
| | : | |
| VS. | : | |
| | : | |
| MICHAEL R. REGAN, UNITED STATES | | |
| MARSHALL FOR THE MIDDLE DISTRICT OF | : | (JUDGE VANASKIE) |
| PENNSYLVANIA; ERIC HOLDER, | : | |
| ATTORNEY GENERAL OF THE UNITED | : | |
| STATES; SUSAN TORRES, ATTORNEY- | : | |
| ADVISOR, OFFICE OF THE LEGAL | : | |
| ADVISOR, UNITED STATES DEPARTMENT | : | |
| OF STATE; HILLARY RODHAM CLINTON, | : | |
| SECRETARY OF STATE OF THE UNITED | : | |
| STATES, | : | |
| RESPONDENTS | : | |

*******************************************************************************************

BRIEF IN SUPPORT OF HARSHBARGER'S EMERGENCY
MOTIONS FOR CERTIFICATE OF APPEAL ABILITY,
STAY OF EXTRADITION ORDER, AND CONTINUED BAIL PENDING APPEAL

I.    PROCEDURAL HISTORY

On April 20, 2008, an information sworn by Canadian authorities charged

Mary Beth Harshbarger with criminal negligence causing death and carelessly using a

firearm or ammunition in violation of Section 86(1), 219(1) and 220(a) of the Criminal

Code of Canada. The government of Canada then contacted the United States

Department of State and requested extradition.

On December 5, 2008, the United States filed an ex parte complaint and various

documents on behalf of the Government of Canada seeking the extradition of Ms.

Harshbarger to Canada for the alleged crimes committed in the Canadian provinces of Newfoundland and Labrador on or about September 14, 2006.

On February 13, 2009, an extradition hearing was held, at which Magistrate Judge Malachy Mannion received into evidence the government's affidavits in support of extradition and heard arguments from the parties.

On March 4, 2009, pursuant to a Memorandum & Order, Magistrate Judge Mannion ordered extradition, issuing a Certificate of Extraditability and Order of Commitment. Ms. Harshbarger was ordered to surrender herself to the custody of the United States Marshal on March 13, 2009, pending disposition of the matter by the Secretary of State and her transfer to the custody of authorized agents from Canada "unless such custody, commitment, or transfer is vacated or stayed by court order."

On March 9, 2009, Harshbarger filed an Emergency Motion to Stay Certification and Order of Commitment, Magistrate Mannion denied that stay, but extended Ms. Harshbarger's surrender date to March 20, 2009. On March 16, 2009, Ms. Harshbarger filed an Emergency Petition for Writ of Habeas Corpus, after which her extradition order was stayed until March 27, 2009 by this Court.

On March 25, 2009, oral argument on the habeas corpus petition was heard, and this Court permitted the petitioner to be released on bail pending a decision on the issues presented in the habeas petition.

On April 13, 2009, pursuant to its Memorandum and Order of that date, this Court denied Ms. Harshbarger's habeas corpus petition and ordered her to surrender herself to the United States Marshal's Office on Friday, April 27, 2009.

This brief is filed in support of Mary Beth Harshbarger's simultaneously

filed emergency motions for a certificate of appealability, a stay of the extradition order

currently in effect, and continued bail pending appeal of the denial of her habeas corpus

petition.

II.     STATEMENT OF THE FACTS

At the evidentiary hearing of February 13, 2009, the United States, in seeking

the extradition of Mary Beth Harshbarger to Canada on behalf of the Government of

Canada for the alleged crimes of criminal negligence causing death and carelessly

using a firearm or ammunition in violation of the Criminal Code of Canada, presented

hearsay evidence alone in the form of affidavits and other documents in an attempt

to support a finding of probable cause that Ms. Harshbarger committed the alleged

crimes. Before, during, and since that extradition hearing, Ms. Harshbarger has

maintained, pursuant to Article 10(1) of the U.S. - Canada Extradition Treaty and

In re United States Extradition of Sylvester, 2006 US Dist. LEXIS 98131 at 4-9 (M.D.

Pa. Feb. 14, 2006), that hearsay evidence alone is insufficient to establish probable

cause at an extradition hearing when the US - Canada Extradition Treaty is the

operative treaty and when the person whose extradition is sought is arrested in

Pennsylvania.

On March 4, 2009, the extradition magistrate nonetheless ordered the

extradition, issuing a Certificate of Extraditability and Order of Commitment in

regard to Ms. Harshbarger. The magistrate found that hearsay evidence alone

was sufficient to support probable cause at an extradition hearing.

On April 13, 2009, this Court issued its decision on Ms. Harshbarger's

habeas corpus petition filed pursuant to 28 U.S.C. §2241, denying said petition and

finding, as the extradition magistrate did, that hearsay alone could suffice to establish probable cause at an extradition hearing.

The extradition magistrate's holding and this Court's holding in regard to the sufficiency of hearsay evidence to establish probable cause at extradition hearings stand at odds with Judge John E. Jones's holding in Sylvester, supra. Thus, there is a split of opinion within the Middle District of Pennsylvania in regard to this issue. Additionally, 18 U.S.C. §3184, which states that the evidence at an extradition hearing must be sufficient "under the provisions of the proper treaty" has not been reconciled with this Court's view of 18 U.S.C. §3190, which allows for various forms of documentary hearsay to be received and admitted "for all purposes" at an extradition hearing. Case law which predates the extant US - Canada treaty and 18 U.S.C. §3184 has only served to complicate the issue further.

In addition to the foregoing issue, Ms.Harshbarger has raised the issues that the hearsay evidence, in any event, was insufficient to support probable cause and that the criminal offense upon which her extradition is premised is unconstitutionally vague.

Her intent is to appeal the denial of her habeas corpus petition to the United States Court of Appeals for the Third Circuit. To this effect, she now motions for a Certificate of Appealability. She also  requests that her extradition order be stayed pending a decision on her appeal. She would likely be extradited before this appeal is decided  were the stay not granted, making the appeal moot and likely to be dismissed. Finally, she requests continued bail pending the outcome of her appeal. She is a middle-aged mother of two young children. She has not been a flight risk nor a danger to the community. In recognition of this, both the  extradition

magistrate and this Court have allowed her to remain on release status during the course of her extradition case. She has posted $100,000.00 bail in this case to further ensure her presence in the Middle District of Pennsylvania and her appearances at required court appearances. Her forthcoming appeal will address a split of judicial opinion in the Middle District of  Pennsylvania.

III.   ARGUMENT

A.   **A CERTIFICATE OF APPEAL ABILITY SHOULD BE GRANTED IN THE HARSHBARGER CASE BECAUSE THE CASE INVOLVES SERIOUS AND SUBSTANTIAL ISSUES REGARDING EXTRADITION PROCEEDINGS THAT HAVE LED TO A SPLIT IN JUDICIAL OPINIONS WITHIN THE MIDDLE DISTRICT OF PENNSYLVANIA**

While a certificate of appealability is apparently not required to appeal from the denial of a section 2241 petition, See Barkey vs. Marberry, 556 F.3d 142, 146 (3rd Cir. 2009) citing United States vs. Cepero 224 F.3d 256, 264-65 (3rd Cir, 2000), petitioner Mary Beth Harshbarger, out of an abundance of caution given the relatively esoteric nature of extradition proceedings, and because the instant case involves serious and substantial issues of law regarding extradition proceedings (such that a split in judicial opinion has occurred between this Court and that of Judge John E. James in In re United States Extradition of Sylvester, No. 4:CR 05-0490, Dkt. Entry 10 (M.D. Pa. Feb. 14, 2006) within the Middle District of Pennsylvania - See this Court's Memorandum of April 13, 2009 AT 10-11, 17-18 (hereinafter "Memo of 4-13-09")), applies for a certificate of appealability in the instant case, even if it is only discretionary in nature. This matter calls out for further appellate review.

Contrary to the <u>Sylvester</u> decision, this Court has held that hearsay evidence alone is sufficient to support a finding of probable cause to extradite to Canada a person found in Pennsylvania. Memo of 4-13-09 at 18. In doing so, the Court has found that 18 U.S.C. § 3190 is dispositive in that it allows for the use of hearsay "as evidence...<u>for all purposes</u> of such [extradition} hearing." (Emphasis added) <u>Id.</u> At 11-12. <u>Sylvester</u> did not take this federal statute into consideration and the petitioner's argument cannot be reconciled with it, the Court acclaims. <u>Id.</u>

What the court in <u>Sylvester</u> does take into account, however, is the specific language of the extradition treaty that exists between the United States and Canada. In doing so, it finds that Article 10(1) of the U.S. - Canada extradition treaty means that Pennsylvania law must apply to the determination of probable cause when the person sought for extradition is found in Pennsylvania. Judge Jones cites the following specific language from Article 10(1) of the Treaty in arriving at this conclusion:

> Extradition shall be granted <u>only if</u> the evidence be found <u>sufficient</u>, <u>according to the laws of the place where the person sought shall be found</u>... to justify his committal for trial of the offense of which he is accused had been committed in its territory...

(emphasis added) <u>In re United States Extradition of Sylvester</u>, 2006 U.S. Dist. LEXIS 98 131 at 4 (M.D. Pa. Feb 14, 2006). Such a finding, it is submitted, is consistent with the language of 18 U.S.C. §3184, which, in directing the extradition magistrate provides,

in pertinent part, as follows:

> If, on such [extradition] hearing, he deems the evidence sufficient to sustain the change <u>under the provisions of the proper treaty</u> or convention, ...he shall certify the same, together with a copy of all of the testimony taken before him, to the Secretary of State...

(emphasis added).

Pennsylvania law, as noted in <u>Sylvester</u>, holds that an accused cannot be bound over for trial if hearsay evidence is the only type of evidence presented against him at the preliminary hearing.  <u>Sylvester</u>, 2006 U.S. Dist. LEXIS 98131 at 7. This mandate is not simply a matter of procedural law, but, as <u>Sylvester</u> notes, it is a guarantee embodied in the Pennsylvania Constitution that an accused has the right to confront the witnesses against him "in all criminal prosecutions," a right that is clearly extended to an adversarial preliminary hearing, <u>Id</u>. at 8 citing <u>Commonwealth vs. Buchanan</u>, 525 Pa. 413, 419 (1990).

Given the above, the question becomes: How does one reconcile 18 U.S.C. §3190 with 18 U.S.C. §3184 in the context of the U.S. - Canada extradition treaty when the person sought for extradition is found in Pennsylvania? It is submitted that neither this court nor the <u>Sylvester</u> court has authoritatively accomplished such a reconciliation, the former relying more heavily on §3190 and the latter on §3184. Judge Jones is not alone in finding that state law governs the determination of probable cause given the language of Article 10(1) of the U.S. - Canada extradition treaty, which is similar to the language found in other extradition treaties as well. Consider the U.S. - Italy Treaty:

> The original version of Article V of the 1973 treaty provided that sufficiency would be determined according to the "laws of the place where the person sought shall be found, "language similar to that in the 1868 Convention. In the 1970 negotiating session, The Italian delegation insisted that this be changed to "laws of the requesting party." Both delegations appear to have been aware of cases construing the discarded

> language to refer to state law, e.g. Pettit vs.
> Walshe, supra; Shapiro vs. Ferrandina, supra;
> both appear to have contemplated that the
> change would ensure that this construction
> not be carried forward and that uniform federal
> law be applied.

Greci vs. Birknes, 527 F.2d 956, 958-59 (1st Cir 1976).

As the aforementioned scenario illustrates, if the parties to an extradition treaty do not want a result that depends on state law, the treaty can be modified to preclude that prospect, something that clearly has not occurred with the U.S. - Canada treaty. The court in Sylvester was certainly aware of this, as Sylvester himself made this very point in "Sylvester's Reply to the Government's Memorandum Supporting Extradition" (Document #9 filed in Dkt.# 4:05-CR-490 on February 6, 2006 at 2-3). Thus, it appears that the U.S. - Canada treaty intended that state law apply under Article 10(1) and that the results of a probable cause hearing might well depend on the state in question. The parties to the treaty bargained for such a provision and never modified it.

In light of the above, the Court's concern for "the implication on enforcement of bilateral treaty obligations if the law of fifty states would need to be considered when determining the character of the evidence that may be considered in determining probable cause for extradition purposes," Memo of 4-13-09 at 17, is counterbalanced by the fact that these are bargained-for provisions by the parties to each and every extradition treaty, who have the opportunity to modify any provision should they so choose. While one of the objects of a given treaty may be to obviate the need for the demanding government to send witnesses to another country to institute legal proceedings, See Memo of 4-13-09 at 16, such an object can be clearly bargained for in the language of the treaty and, in some cases, may not be as important as in others.

(e.g., as in the case of Canada, which is an adjacent neighboring country). It is, after all, an overstatement to say that requiring non-hearsay evidence would defeat "the whole object" of a treaty, Id., which is, first and foremost, to serve the interests of justice on an international level.

This Court proposes that Article 8 of the U.S. - Canada Treaty (providing "The determination that extradition should or should not be granted shall be made in accordance with the law of the requested state and the person whose extradition is sought shall have the right to use all remedies and recourses provided by such law" (emphasis added)) is consistent with the use of the probable cause standard applied by courts in federal preliminary hearings, which allows hearsay. Memo of 4-13-09 at 10, n.8. This too begs for a reconciliation (namely, how reconcile Article 8 with Article 10(1)?) Given that both articles of the treaty use "shall" doesn't the "only if" of Article 10(1)  trump the "should or should not" of Article 8 given that "should" doesn't necessarily mean "must?" Again, we have a sub-issue that cries out for clarification from the United States Court of Appeals for the Third Circuit!

Even the Court's insistence that the case law compels the conclusion that hearsay evidence is sufficient to establish probable cause at an extradition hearing warrants Third Circuit review. The United States Supreme Court cases cited are nearly a century old (i.e., Bingham vs. Bradley, 241 U.S. 511 (1916) and Collins vs. Loisel, 259 U.S. 309 (1922)). It is noteworthy that the U.S. - Canada extradition treaty in question was enacted in 1971, See Treaty on Extradition, Dec. 3, 1971, U.S. - Canada, T.I.A.S. No. 8237, and subsequently amended by two protocols. See Protocol Amending the Extradition Treaty with Canada, Jan. 11, 1988, U.S. - Canada, 1988

U.S.T. LEXIS 82; Second Protocol Amending the Extradition Treaty with Canada, Jan. 12, 2001, U.S. - Canada, 2001 U.S.T. LEXIS 92, 2006 WL 2530939. Furthermore, 18 U.S.C. §3184 was first enacted on June 25, 1948 and amended in 1968, 1988, 1990, and 1996. The chronology here begs the questions: How dispositive can case law be in regard to a treaty and a statute that post date it by so many years? We are, after all, dealing with different branches of government, with checks and balances.

     Bingham, for instance, is not really dispositive in regard to the proposition that live witnesses are not necessary in the instant case. In Bingham, the petitioner was arguing that certain "affidavits...were incompetent because taken ex parte, in the absence of appellant and without opportunity for cross-examination. Bingham, 241 U.S. at 517. Citing the statute equivalent to the present-day 18 U.S.C. §3190, the Supreme Court held that such affidavits were competent. The Court was not, however, discussing Article 10(1), the provision of the Treaty at issue in the instant case.

     Claiming "a context indistinguishable from that presented here, "this Court cites Shapiro vs. Ferrandina, 478 F.2d 894, 901 (2nd Cir. 1973) with favor for the proposition that state rules requiring non-hearsay evidence for probable cause determinations do not apply in extradition hearings, Memo of 4-13-09 at 14-16, but, unlike the New York Criminal Procedure Law §180.60 at issue in Shapiro, Pennsylvania constitutional law, as noted above, is at issue in the instant case. Whereas Chief Judge Friendly in Shapiro was able to find that §180.60, barring the use of hearsay evidence in preliminary hearings in felony cases, "is not a matter of sufficiency...but rather a restriction on the kind of evidence in hearings relating to particularly serious crimes" (such that, in extradition hearings, it is "precisely the sort of issue to be determined

by national rather then by state law."), the same cannot be said of the Pennsylvania law that bars the use of hearsay evidence alone in determining probable cause. As it comes directly from the Pennsylvania Constitution, it is substantive law in Pennsylvania, not merely procedural law, and does not therefore "savor[s] of technicality," See Bingham, 241 U.S. at 517; Memo of 4-13-09 at 14. Given this distinction, Shapiro's initial finding that "New York law applied because Mr. Shapiro was arrested there," Memo of 4-13-09 at 15, remains intact as far as Pennsylvania law applying to the instant case. (as does the finding in Pettit vs. Walshe, 194 U.S. 295, 217 (1904) a case Chief Judge Friendly relied on, that "the phrase 'the laws of the place where a person sought shall be found' refers to the law of the state where the arrest occurs rather than to the laws of the United States.").

Indeed, as the court notes, Memo of 4-13-09 at 15-16, n. 11, there is a line of cases that support the proposition that state law applies to extradition matters unless the treaty indicates otherwise. Greci vs. Birknes, supra, 527 F.2d at 958; In re Extradition of Williams, 469 F. Supp. 16, 17 (S.D.N.Y. 1977); Matter of Extradition of Schwerdenback, 3 F. Supp. 2.d 113, 115 (D. Mass 1998).

As the foregoing analysis indicates, the split of opinion between this court and the court in Sylvester is multifaceted, such that a Third Circuit review of this matter is strongly warranted. While Sidali vs. INS, 107 F.3d 191, 194 (3rd Cir. 1997) and Hoxha vs. Levi, 465 F.3d 554, 560 (3rd Cir. 2006) have noted that the role of the judiciary in the extradition process is limited, Memo of 4-13-09 at 7-8, neither case has addressed the U.S. - Canada extradition treaty and the applicability of Pennsylvania law, via Article 10(1) of said treaty, to the determination of probable

cause in an extradition hearing conducted pursuant to 18 U.S.C. §3184. The issue of whether hearsay evidence alone is enough to support probable cause in such a context has only been addressed by this Court and the court in Sylvester, which now find themselves at odds.

In the instant case, petitioner Mary Beth Harshbarger asserts that she has been denied her constitutional right to due process under the Fifth and Fourteenth Amendments to the United States Constitution by being subjected to a certificate of extraditability and order of commitment upon a finding of probable cause that she committed the alleged Canadian offense when hearsay evidence alone was presented at her extradition hearing. Such a finding, she contends, violates Article 10(1) of the U.S. - Canada extradition treaty for the reasons analyzed above, which she submits make a substantial showing that she has been denied a constitutional right. "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. Lamholt vs. Burt, 219 F. Supp. 2nd 977 (N. D. Ia. 2002) citing Garrett vs. United States, 211 F.3d 1075, 1076-77 (8th Cir.) cert. denied 531 U.S. 908 (2000) (where the magistrate and the court's split of opinion justified a certificate of extraditability).

A certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Slack vs. McDaniel, 529 U.S. 473, 484 (2000) (where case was remanded for further proceedings on whether petitioner was entitled to a certificate of appealability). A petitioner makes a substantial showing of the denial of a constitutional right "by demonstrating that jurists of reason would disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Muhammad vs. Sec'y Dep't of Corr.</u>, 554 F.3d 949, 954-55 (11th Cir. 2004), citing <u>Miller-El vs. Cockrell</u>, 537 U.S. 322, 326 (2003).

 For all the aforementioned reasons, it is submitted that the split of opinion between this Court and that of the court in <u>Sylvester</u> represents reasonable debate by jurists of reason that justifies a certificate of appealability. Accordingly, the petitioner requests that this court issue a certificate of appealability from the denial of her §2241 habeas corpus petition in this case.

   B. **AN EMERGENCY STAY OF THE EXTRADITION ORDER IN HARSHBARGER'S CASE SHOULD BE GRANTED UNTIL HER APPEAL OF THE DENIAL OF HER HABEAS CORPUS PETITION IS DECIDED BY THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT.**

 Incorporating by reference the arguments set forth in <u>Argument I</u> of this brief, petitioner, Mary Beth Harshbarger requests that this court issue a stay of the extradition order now in effect until such time that an appeal of the denial of her habeas corpus petition is decided by the United States Court of Appeals for the Third Circuit. While she hopes this Court issues a certificate of appealability in her case, it is her intent, in any case, to file an appeal forthwith upon an order of this court granting or denying said certificate. Whatever the case, she submits that her request for this injunctive relief should be granted upon this Court's consideration of the four factors commonly weighed in making a determination of this nature.

 The balancing test conducted when a court considers a request for

preliminary or temporary injunctive relief consists of an examination of the

following four factors: (1) the moving party's likelihood of success on the merits;

(2) irreparable injury to the moving party if an injunction is denied; (3) substantial

injury to the opposing party if an injunction is granted; and (4) the public interest.

Kiyemba vs. Obama, 2009 U.S. App. LEXIS 7739 at 8-9 (D.C. April 7, 2009). In

order to grant a preliminary injunction, a court must find: (1) the plaintiff has at least a

reasonable likelihood of success on the merits; (2) the plaintiff has no adequate remedy

at law and will be irreparably harmed if the injunction does not issue; (3) the threatened

injury to the plaintiff outweighs the threatened harm the injunction may inflict on the

defendant; and (4) the granting of a preliminary injunction will not disserve the public

interest. Robinson vs. True, 1993 U.S. Dist. LEXIS 9421 at 3 (N.D. Ill. 1993) citing

Adams vs. Attorney Registration and Disciplinary Comm'n, 801 F.2d 968, 971 (7th

Cur. 1986).

Without belaboring the issue, the petitioner references the detailed analysis

presented in Argument I of this brief in submitting that there is at least a reasonable

likelihood of success on the merits in regard to Harshbarger's anticipated appeal.

Succinctly put, there is a split of opinion between this Court and the court in Sylvester,

supra, in regard to whether hearsay evidence alone, given Article I0(1) of the

U.S. - Canada extradition treaty, can suffice to support a finding of probable cause

at an extradition hearing when a person sought for extradition is arrested in

Pennsylvania. This Court's opinion (and that of the extradition magistrate below

represents the first opposing judicial view on this issue within the Middle District of

Pennsylvania. Sylvester, it should be noted, was found to be unextraditable despite the

far

more heinous crimes of rape, kidnaping, and robbery he was alleged to have committed by Canadian authorities.

Certainly, when it comes to the second factor, Mary Beth Harshbarger would suffer irreparable injury were the extradition order in effect not stayed. She is the middle- aged mother of two young children, has no prior criminal history, and is accused of a crime which was accidental in nature even though she is alleged to have been criminally negligent. Should the stay not be granted, she very likely would be whisked away to Canada before her appeal, involving very serious and substantial issues, could be decided. The very important forthcoming appeal that could resolve the judicial split now in existence would become moot and the public interest would be disserved.

In <u>Artukovic vs. Rison,</u> 784 F.2d 1354, 1356 (9th Cir. 1986), the appellate court found irreparable injury to be evident where the petitioner's appeal would become moot and would be dismissed since the extradition would have been carried out. The scenario is much the same in Ms. Harshbarger's case. It is noteworthy that 18 U.S.C. §3188 calls for transfer of the person committed on a pending extradition to the foreign government within two calendar months.

The foregoing irreparable injury to Ms. Harshbarger would far outweigh any harm a stay might inflict on the United States or Canadian authorities. The fact is that Canadian authorities took more than one year and a half after the incident here before they issued a criminal information in this case on April 20, 2008. The U.S. State Department took more than two years from the time of the incident to file a complaint for extradition on behalf of the government of Canada. A further delay for the

purposes of Ms. Harshbarger's having a full hearing on her appeal is not likely to cause any harm to either government and, indeed, may serve to clarify issues that might continue to arise in regard to the execution of the U.S. - Canada extradition treaty in the future. As there were no eyewitnesses to the shooting that took place, there is no danger as to the unavailability of critical witnesses in the case nor is there likely to be any fatal fading of memory given the affidavits that have been taken from members of Canadian law enforcement and the hunting guide, Lambert Greene, who assisted the Harshbargers during their hunting trip. Thus, the third factor gravitates toward granting the requested stay of the extradition order in effect as well.

As noted in the context of the third factor, the granting of the requested injunction, rather then performing a disservice to the public interest, will serve only to support the public interest. The language of the U.S. - Canada extradition treaty needs some clarification and possible modification, as is evident from the split of judicial opinion that has arisen in regard to its meaning and intent. The fact that Sylvester was found to be unextraditable whereas Mary Beth Harshbarger has thus far been found to be extraditable only seems to underscore the importance of the forthcoming appeal and the fundamental fairness of allowing Ms. Harshbarger to be free of the threat of extradition until her appeal is decided.

In deciding whether to grant an injunction, the district court must balance the strengths of the requesting party's arguments in each of the four required areas. City-Fed Fin, Corp vs. Office of Thrift Supervision, United States..., 58 F.3d 738, 747 (D.C. Cir. 1995) If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in the other cases areas are weak. Id.; Belbacha vs.

Bush, 520 F.3d 452, 459 (D.C. Cir. 2008). An injunction may be justified where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury. City Fed Fin. Corp, 58 F.3d at 747. Conversely, where the probability of prevailing on the merits is far from clear, the seriousness of the harm faced may justify the injunction. See Belbacha, 520 F.3d at 459.

In Mary Beth Harshbarger's case, it is submitted that her request for a stay of the extradition order in effect passes the requisite balancing test in regard to all four factors. Certainly one or more of the factors can be viewed as particularly strong. Accordingly, she moves this court for an emergency stay of the extradition order in effect since March 27, 2009.

### C.   MS. HARSHBARGER SHOULD BE GRANTED BAIL ON APPEAL.

While there is a presumption against bail in extradition cases, In re Extradition of Russell, 805 F.2d 1215, 1216 (5th Cir 1986), it is a rebuttable presumption. The burden rests with the extraditee to show that she is not a flight risk nor a danger to the community, and that special circumstances warrant release. Id. at 1217.

Both the extradition magistrate and this Court have seen fit to grant Ms. Harshbarger release status during the course of the instant extradition proceedings, the former by unsecured bail and this court by the posting of $100,000.00 property bail after the hearing on the habeas corpus petition, which took place on March 25, 2009. It is clear that both courts have recognized that Ms. Harshbarger is a life-long resident of Wyoming County, within the Middle District of Pennsylvania, is the middle-aged mother of two young children, and has no prior criminal history whatsoever. She has, in fact, made all required court appearances to date, complied with the supervision

of the United States Probation Office, and cared for her family during this time. The $100,000.00 bail she has posted only serves to further ensure that she will not flee the jurisdiction. All of this continues to illustrate that she will not flee the jurisdiction. All of this continues to illustrate that she is not a flight risk nor a danger to the community.

It is submitted that there are also special circumstances in her case that warrant the continued bail pending appeal that she now requests. Special circumstances can arise under a variety of conditions, or by virtue of a combination of conditions that in the aggregate create a compelling case for release on bail. In re Huerta, 2008 U.S. Dist LEXIS 48524 at 2-3 (S.D. TX. 2008). In Ms. Harshbarger's case, not only is she the mother of two young children, but also the mother of a severely handicapped adult child who lives at home with her and for whom she is the sole care giver. It would make little sense therefore to have her incarcerated during the course of her appeal to the Third Circuit.

Accordingly, it is requested that she be granted bail pending appeal.

IV.    CONCLUSION

For all the foregoing reasons, it is submitted that Mary Beth Harshbarger's emergency  motions for a certificate of appealability, a stay of extradition order, and continued bail pending appeal should be granted.

RESPECTFULLY SUBMITTED:


BY: /s/ PAUL P. ACKOUREY, ESQUIRE
        PAUL P. ACKOUREY, ESQUIRE
        116 NORTH WASHINGTON AVENUE
        FIRST FLOOR, STE. 1-E
        SCRANTON, PA   18503
        (570) 342-4242   FAX:(570) 342-8382

PA BAR#: 38506
lop45ackourey@epix.net