1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


MARY BETH HARSHBARGER,          )
                                )
             Plaintiff          )
                                )
                                )
        vs                      )    09cv487
                                )
                                )
MICHAEL REGAN, et.al.,          )
                                )
             Defendants         )



    BEFORE:    HONORABLE THOMAS I. VANASKIE
               United States District Judge
               for the Middle District of Pennsylvania

               Telephone Conference
               Re: Habeas Corpus Petition

               Tuesday, March 17, 2009
               Scranton, Pennsylvania


A P P E A R A N C E S:

For The Plaintiff:        PAUL P. ACKOUREY, ESQ.
                          Law Offices of Paul P. Ackourey
                          116 N. Washington Avenue
                          Suite 1-G
                          Scranton, Pennsylvania  18503



For The Defendants:       CHRISTIAN A. FISANICK, ESQ.
                          U.S. Attorney's Office
                          235 N. Washington Avenue
                          Scranton, Pennsylvania 18503


    KRISTIN L. YEAGER, RMR,CRR - COMPUTER TRANSCRIPT

2

1    (The following took place by way of teleconference.)

2    THE COURT: Hello.

3    MR. ACKOUREY: Hello, Judge.

4    THE COURT: Yes, this is Judge Vanaskie.

5    MR. FISANICK: Hi, Your Honor, Chris Fisanick.

6    MR. ACKOUREY: And Paul Ackourey, Judge.

7    THE COURT: Good morning. Thanks for being available on

8    short notice.

9    I've been assigned this Habeas Corpus Petition in the

10   Harshbarger matter, and I think, probably, you all know or

11   should know that I had presided over a civil litigation that

12   involved Mrs. Harshbarger, in connection with distribution of

13   life insurance proceeds. I don't think that poses any problem,

14   but I just wanted you both to be aware of it. And I do have a

15   court reporter here and a record, of course, of the conference

16   is being made.

17   Now, I needed to find out -- I know that Magistrate Judge

18   Mannion has directed that she surrender on the 20th of March,

19   which is this coming Friday. I need to find out, What's my

20   scope of review here? Am I limited to the record that has been

21   presented to Judge Mannion, and if so, what is the need to have

22   this decided by the 20th, from the Government's perspective, I

23   take it? And those are a couple of questions I have right now.

24   So maybe we start with the scope of review. First, is my

25   review limited to the record compiled by the Magistrate Judge?

1    MR. FISANICK: Your Honor, it's the Government's position

2  that your review is extremely limited in this case, and we have

3  filed, in a previous pleading with Magistrate Judge Mannion,

4  that that, basically, is the review. It's not a plenary review

5  or not a de novo review. You basically, as I see it, there are

6  only three things you can review, and the only one I think that

7  would be in dispute, really, would be the probable cause

8  determination of Magistrate Judge Mannion.

9    THE COURT: All right. Do you agree, Paul?

10    MR. ACKOUREY: Judge, in response, I believe that your

11  review is limited to what has already -- in terms of a factual

12  basis -- is limited to what has been presented, so to that

13  extent, I would agree. I think the crux here is the probable

14  cause determination. I think we have it framed somewhat

15  differently in our habeas, in that, I believe there is also an

16  equal protection issue raised.

17    But it's also -- I think it goes to the issue of -- to the

18  probable cause issue.

19    THE COURT: All right.

20    MR. FISANICK: Just in rebuttal to that, I would point out,

21  Your Honor, that the U.S. Constitution doesn't apply to an

22  extradition proceeding, such as the Confrontation Clause, the

23  Due Process Clause or Equal Protection Clause, so it pretty

24  much is limited to the probable cause determination. Any of

25  these other issues are not promptly before the Court.

4

1    THE COURT: Paul, your Equal Protection argument, is that

2  based on the fact that Judge Jones reached a decision in the

3  Sylvester matter that may be different than the decision

4  reached by Judge Mannion in this case?

5    MR. ACKOUREY: Well, it was more than just that he reached a

6  different decision, Judge, the application of the law was

7  different. He read Section 10, Paragraph 1 of the Treaty to

8  require the application of Pennsylvania law in determining the

9  issue of probable cause, namely, in Pennsylvania, probable

10  cause is determined -- cannot be based solely on hearsay, and

11  he ruled that the evidence, which was solely hearsay, was

12  insufficient to establish probable cause as a matter of law.

13    Judge Mannion has rejected that view. I think there's an

14  issue as to whether or not Judge Jones' determination is, in

15  fact, binding, as it relates to the Magistrate's review, but

16  nonetheless, we are beyond that at this stage. So to that

17  extent, I mean, there's a real question here as to what law

18  applies.

19    MR. FISANICK: Federal law applies, Your Honor, and as

20  Magistrate Judge Mannion pointed out in his opinions, the case

21  laws are legion that an extradition proceeding can be based

22  solely on the paper, and it's not subject to the idiosyncratic

23  procedural laws of the jurisdiction, such as Pennsylvania.

24  There's U.S. Supreme Court precedent that suggests that the

25  Government does not have to call four constables into the

5

1  United States, in fact, that would actually be in derogation of

2  the rights and privileges established under the Treaty, in

3  that, we are not disrupting a foreign police department's

4  process by bringing them to the United States to testify.

5      THE COURT: Is there any distinction to be made on the basis

6  of the source of the substantive law -- the substantive

7  criminal law, in terms of dual criminality? In other words,

8  does it matter whether -- in Judge Jones' case, he was looking

9  at State law.

10     MR. FISANICK: Exactly, Your Honor, it does, in what

11  Magistrate Judge Mannion has looked on. The one charge, he

12  granted extradition on, he looked at Federal

13  procedural -- Federal law, Federal substantive law, and I would

14  submit to you that the Sylvester opinion by Judge Jones is

15  completely distinguishable, because it has no regard to a

16  Federal statute as being the cognate offense for dual

17  criminality.

18     MR. ACKOUREY: Judge, looking at Sylvester, the decision in

19  Sylvester, I believe kidnapping and rape were the offenses that

20  were the subject offenses in Canada. I don't know that it's so

21  clear from Judge Jones' opinion what the -- I'm just -- based

22  upon my reading of the decision, it's not clear what the

23  corresponding offense he was relying on, but it's clear that he

24  does an analysis of Section 10.1 in determining that

25  Pennsylvania law applies as to the issue of what constitutes

6

1  competent evidence.

2      THE COURT: Right. Of course, he also found that the Statute

3  of Limitations, at least, the Pennsylvania Statute of

4  Limitations had expired.

5      MR. FISANICK: And Magistrate Judge Mannion, Your Honor,

6  found the same thing for the second of the two charges

7  requested in this case, that is, in fact, he did actually apply

8  Sylvester and did no disservice to Sylvester, recognizing that

9  that was Judge Jones' interpretation.

10      Now, admittedly, Sylvester was not appealed to the Third

11  Circuit and, clearly, the Government has a different view as to

12  the correctness of Sylvester, but leaving that aside, because I

13  don't think we need to face that issue, Magistrate Judge

14  Mannion has ordered extradition on just one charge, finding

15  that a Federal law was a cognate, meaning, that Federal

16  procedure -- Federal procedure, if it applies in some small

17  part does apply and the Statute of Limitations had not run, and

18  that a Federal charge may be proven completely by hearsay

19  according to what the U.S. Supreme Court has said in

20  extradition hearings.

21      THE COURT: Paul, I take it you don't dispute the fact that

22  Federal law does have a comparable criminal statute?

23      MR. ACKOUREY: I don't dispute the fact that the comparable

24  statute was the involuntary manslaughter, we haven't disputed

25  that, however, I think there is a position to be made and a

1  case to be made, and it's been put in our motion that, as

2  applied here, there's some concern about whether Ms.

3  Harshbarger could have known that her actions would have led to

4  criminal conduct.

5      MR. FISANICK: The problem, Your Honor, with that argument

6  is that's an argument based on the U.S. Constitution and an

7  argument, perhaps, raising an affirmative defense in the

8  requesting jurisdiction, which that's not what we are here to

9  decide, that's up to Canada, and if she feels that that statute

10  is vague as applied to the facts of her case, that's something

11  she would have to raise in a Canadian Court.

12      THE COURT: Do I have the record before Judge Mannion?

13      MR. FISANICK: There's a transcript.

14      MR. ACKOUREY: There's a transcript, Judge.

15      THE COURT: I take it there were affidavits presented or

16  what was presented in terms --

17      MR. FISANICK: Your Honor, the Government's presentation was

18  based upon the diplomatic filings, as certified by the State

19  Department from the Department of State of Canada. So in other

20  words, the hearing, basically, consisted of the Government's

21  introduction of all the diplomatic papers, because nothing else

22  really was in dispute. The jurisdiction of Magistrate Judge

23  Mannion was not in dispute, the jurisdiction of the Defendant

24  in this District was not in dispute, the identity of the

25  Defendant was not in dispute, actually, the dual criminality

1  was not really in dispute, what was in dispute was really the

2  determination of the probable cause.

3       THE COURT: Yes, and it really is just a question of

4  whether, as Paul says, you can rely on hearsay. I guess I want

5  to look at the diplomatic file to see what is included in it.

6       MR. FISANICK: It has affidavits of, Your Honor, like,

7  investigator, case agent, witness, and it is filed with the

8  Court, so that is available.

9       THE COURT: In looking over Judge Mannion's decision, I saw

10 that he referred to documents that would have included

11 statements of Mrs. Harshbarger, herself, in terms of how the

12 matter happened.

13      MR. FISANICK: Um-hum.

14      MR. ACKOUREY: I believe that was included in an affidavit.

15      MR. FISANICK: Yes, it was, Your Honor.

16      THE COURT: Okay. All right, well, are both of you available

17 on Thursday of this week?

18      MR. ACKOUREY: Judge, unfortunately, I have received notice

19 that I have a case proceeding to trial in Luzerne County

20 Thursday morning.

21      THE COURT: How about late tomorrow? I'm not available until

22 late tomorrow.

23      MR. ACKOUREY: Late tomorrow is fine, Judge.

24      MR. FISANICK: What are you anticipating, Your Honor?

25      THE COURT: When I say late, I'm going to have to get a

1   court reporter, I'm talking about 5:30, 6:00.

2       MR. FISANICK: Sure.

3       MR. ACKOUREY: For an argument?

4       THE COURT: Yes, for an argument. That will give me sometime

5   to look at the record here. Because I take it -- unless the

6   Government is willing to extend her surrender date, I need to

7   make a decision.

8       MR. FISANICK: Your Honor, you have to understand, too, and

9   Paul knows this and Magistrate Judge Mannion certainly knows

10  this, that my hands are kind of bound in some small part by the

11  Office of International Affairs in D.C. who are kind of

12  directing me on what I need to do on this, and I'm not in a

13  position to concur in an extension of the surrender date.

14      MR. ACKOUREY: Judge, I mean, the cases are replete, though,

15  with Courts granting stays of the surrender date or stays of

16  the certification of extradition, and even conducting or

17  setting bail. I mean, certainly, the Court has the authority to

18  do that. It has been requested in the motion itself.

19      MR. FISANICK: I understand that. Again, I can say without

20  speaking with OIA today that I understand the cases pending the

21  disposition of a habeas corpus almost unanimously grant a stay,

22  because, obviously, the point would be moot, but what my point

23  is, I would not concur in a stay of the turn-in date. We could

24  hold off the extradition until His Honor reviews it and decides

25  the habeas, but the turn-in date, there is a certificate of

1  extraditability issued here, Judge Mannion has basically

2  ordered her to turn herself in, and we can't concur in anything

3  other than that.

4      MR. ACKOUREY: Judge, just in response, and I appreciate

5  that, however, I mean, in all fairness, this case is over two

6  years old, my client hasn't fled anywhere, I mean, the Court

7  certainly could set bail. She's a mother of two children, she

8  lives in Meshoppen, I don't think she's a flight risk, she has

9  appeared for every Court proceeding up to this point in time.

10     MR. FISANICK: I agree with that, I understand that. But as

11 I said, I, unfortunately, am bound by what my superiors in D.C.

12 are basically allowing me to argue on this.

13     MR. ACKOUREY: I understand.

14     MR. FISANICK: I have to argue that, while I may agree in a

15 stay of the extradition itself until we work out the legal

16 matters, I'm not in a position to concur in a stay of the

17 turn-in date.

18     MR. ACKOUREY: I understand that. But certainly the

19 Court -- and it certainly would not be cutting new law here if

20 the Court were to stay both.

21     THE COURT: Are you saying stay the turn-in date, the

22 surrender date and extradition, obviously?

23     MR. ACKOUREY: Yes, Your Honor.

24     THE COURT: Well, I'm inclined to do that. I don't want to

25 offend diplomatic sensitivities, but it's putting me in a

1 difficult position. It looks like Magistrate Judge Mannion has

2 done a very thorough job on this matter, but I just got it

3 yesterday.

4     MR. ACKOUREY: I understand.

5     MR. FISANICK: I understand, Judge.

6     THE COURT: And late yesterday, at that. I have a commitment

7 tomorrow to be down -- to guest lecture at the Dickinson Law

8 School, and then I have our first day of our new Court Assisted

9 Re-Entry Program from 3 until about 6. Frankly, it would be

10 extremely difficult for me to get through this matter to be

11 prepared the way I would like to be prepared to render a

12 decision in the matter extremely promptly.

13     How long is your trial going to last, Paul?

14     MR. ACKOUREY: Judge, I would imagine that I'll be done

15 mid-Friday.

16     THE COURT: All right. Well, here's what I'm going to do.

17 I'm going to issue a stay of extradition and a stay of the

18 surrender date. I'm going to move that back to Friday, March

19 27th.

20     MR. FISANICK: That's fair.

21     THE COURT: How are both of you set for Monday?

22     MR. FISANICK: Let me look at my calendar.

23     THE COURT: Monday, March 23.

24     MR. ACKOUREY: Judge, I seem to be the problem. I have a

25 trial in Bradford County starting Monday morning. It's a

1 one-day trial.

2     MR. FISANICK: Monday looks okay with me.

3     THE COURT: All right, how about Tuesday.

4     MR. ACKOUREY: Fine.

5     MR. FISANICK: Tuesday is not okay, I have to be in D.C. on

6 Tuesday.

7     THE COURT: Okay. What does Wednesday look like?

8     MR. FISANICK: Wednesday looks fine.

9     MR. ACKOUREY: Wednesday is fine with me, too, Judge.

10     THE COURT: All right. Well, it will be the same kind of

11 timing, then, Wednesday, March 25th. It may be, and I just want

12 to give you fair warning on this, Paul, that I'm sufficiently

13 convinced, given what I believe will be a narrow standard of

14 review on my part, I would like to confirm that.

15     MR. ACKOUREY: It is.

16     THE COURT: That I may, in fact, rule from the bench after

17 the conclusion of argument.

18     MR. ACKOUREY: I understand.

19     MR. FISANICK: Okay.

20     THE COURT: So I don't want anybody to have the impression

21 that it's likely that there's going to be a continuation of

22 stay -- it may be, it may be, certainly, if I cannot make a

23 decision then, but if I can, I just want Mrs. Harshbarger to

24 know that, all right?

25     MR. ACKOUREY: I understand that, Judge.

1     MR. FISANICK: Okay, Your Honor, what time are we looking at

2 on the 25th?

3     THE COURT: What I would like to suggest on the 25th is 11

4 a.m.

5     MR. FISANICK: Okay.

6     MR. ACKOUREY: Very good.

7     THE COURT: Okay.

8     MR. ACKOUREY: Thank you, Judge.

9     THE COURT: Thank you. We will issue an Order that stays

10 extradition and stays her surrender date until the 27th of

11 March.

12     MR. ACKOUREY: Very good. Thank you, Your Honor.

13     MR. FISANICK: Thank you.

14     THE COURT: Thank you.

15     (At this time the proceedings were adjourned.)

16

17

18

19

20

21

22

23

24

25

14

1        C E R T I F I C A T E

2

3        I, KRISTIN L. YEAGER, Official Court Reporter for the

4  United States District Court for the Middle District of

5  Pennsylvania, appointed pursuant to the provisions of

6  Title 28, United States Code, Section 753, do hereby certify

7  that the foregoing is a true and correct transcript of the

8  within-mentioned proceedings had in the above-mentioned and

9  numbered cause on the date or dates hereinbefore set forth; and

10  I do further certify that the foregoing transcript has

11  been prepared by me or under my supervision.

12

13                              S/Kristin L. Yeager
                                KRISTIN L. YEAGER, RMR,CRR
14                              Official Court Reporter

15
   REPORTED BY:
16
       KRISTIN L. YEAGER, RMR,CRR
17     Official Court Reporter
       United States District Court
18     Middle District of Pennsylvania
       P.O. Box 5
19     Scranton, Pennsylvania  18501

20

21

22        (The foregoing certificate of this transcript
   does not apply to any reproduction of the same by any means
23  unless under the direct control and/or supervision of the
   certifying reporter.)

24

25