PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2243

_____

MARY BETH HARSHBARGER,
                              Appellant

v.

MICHAEL REGAN, United States Marshal for the Middle
District of Pennsylvania; ERIC HOLDER, Attorney General
of the United States; SUSAN TORRES, Attorney Advisor,
Office of the Legal Advisor, United States Department of State;
HILLARY RODHAM CLINTON, Secretary of State of the
United States

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-09-cv-00587)
District Judge: Hon. Thomas I. Vanaskie

_____

Submitted Under Third Circuit LAR 34.1(a)
February 8, 2010

Before: SLOVITER, ROTH and TASHIMA[*], Circuit Judges

(Filed: March 29, 2010)

_____

Paul P. Ackourey
Scranton, PA 18503

        Attorney for Appellant

_____

    [*]  Hon. A. Wallace Tashima, Senior Judge, United States
Court of Appeals for the Ninth Circuit, sitting by designation.

Dennis C. Pfannenschmidt
        United States Attorney
Christian A. Fisanick
        Assistant U.S. Attorney
        Chief of the Criminal Division
Scranton, PA 18501

        Attorneys for Appellees


<u>OPINION OF THE COURT</u>


SLOVITER, <u>Circuit Judge</u>.

        Canada seeks extradition of Mary Beth Harshbarger
("Ms. Harshbarger") for causing the death of her husband in the
Canadian wilderness.  After a Magistrate Judge found that she
was extraditable, Ms. Harshbarger filed a petition for a writ of
habeas corpus, which the District Court denied.  She appeals.[1]

## I.

        In 2006, Ms. Harshbarger traveled from Pennsylvania to
Canada for a week-long hunting trip with her husband, Mark
Harshbarger, and their two young children.  While hunting one
evening, Ms. Harshbarger waited in a pickup truck with the
children while her husband walked in the brush with a Canadian
hunting guide in search of moose.  Ms. Harshbarger was to stay
with the truck and if a moose or bear presented itself, she was to
shoot it.  When Mark Harshbarger was walking back to the truck
and 200 feet away, Ms. Harshbarger shot him with a rifle, killing
him.  Ms. Harshbarger asserts that she mistakenly took her

---

[1]     The Magistrate Judge had jurisdiction over the
government's extradition request pursuant to 18 U.S.C. § 3184, and
the District Court had jurisdiction over this habeas petition
pursuant to 28 U.S.C. § 2241.  We have jurisdiction under 28
U.S.C. § 2253.

husband for a bear emerging from the brush.

On April 20, 2008, Canadian authorities charged Ms. Harshbarger with criminal negligence causing death and carelessly using a firearm in violation of the Criminal Code of Canada.[2]  The Canadian government requested extradition.  On

---

[2]  The relevant provisions of the Criminal Code of Canada provide:

86.(1) Careless use of firearm, etc.–Every person commits an offence who, without lawful excuse, uses, carries, handles, ships, transports or stores a firearm, a prohibited weapon, a restricted weapon, a prohibited device or any ammunition or prohibited ammunition in a careless manner or without reasonable precautions for the safety of other persons.

. . .

219.(1) Criminal negligence–Every one is criminally negligent who (a) in doing anything, or (b) in omitting to do anything that it is his duty to do, shows wanton or reckless disregard for the lives and safety of others.

. . .

220. Causing death by criminal negligence–Every person who by criminal negligence causes death to another person is guilty of an indictable offence and liable (a) where a firearm is used in the commission of the offence, to imprisonment for life and to a minimum punishment of imprisonment for a term of four years; (b) in any other case, to imprisonment for life.

Canada Criminal Code, R.S.C., ch. 86, 219, 220 (1985).

3

February 13, 2009, a Magistrate Judge held an evidentiary hearing during which the Government introduced the affidavits of Canadian law enforcement officers.  Based upon those affidavits, the Magistrate Judge found probable cause to believe that Ms. Harshbarger committed the relevant crime and therefore issued a certificate of extraditability.  The Magistrate Judge's findings were:

      1.  The fact that the defendant was aware her husband was in the bush at the time she took the fatal shot;

      2.  The defendant's admission to the Canadian authorities that she "should not have fired the shot;"

      3.  Statements by Canadian investigators to the effect that they would not have taken the fatal shot under all the attendant circumstances;

      4.  The fact that she took the fatal shot after sunset, notwithstanding the fact that shooting at that time was not, in itself, a violation of law or negligence per se;

      5.  The fact that her husband, with whom she was traveling, was not wearing orange hunting clothes;

      6.  The fact that any number of Canadian investigators reenacting the alleged crime saw an ambiguous black mass, from which one might fairly infer that the defendant took her shot notwithstanding that the identity of what she saw was ambiguous even as to her;

      7.  The fact that despite defendant's claims that she saw or thought she saw a bear, no bear tracks were found by the Canadian investigator on the scene, although human footprints were visible

on the ground; and

      8.  The fact that the defendant
was–apparently–a competent, if not excellent, shot
even at a distance, who had, in fact, killed a
caribou during the course of the same hunting trip,
from which one might reasonably infer that she
knew the consequences of firing her gun could be
fatal to a human being.

App. at 21-22.

Before Ms. Harshbarger was to be extradited to Canada,
she filed a habeas corpus petition in the District Court that
challenged, inter alia, the Magistrate Judge's reliance on the
affidavits as hearsay evidence, which she argued was insufficient
to support a finding of probable cause under the applicable
extradition treaty.  The District Court denied the petition.  Our
review is plenary.  *United States v. Riviere*, 924 F.2d 1289, 1296
n.10 (3d Cir. 1991).[3]

## II.

"Extradition is an executive rather than a judicial
function."  *Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006)
(citing *Sidali v. INS*, 107 F.3d 191, 194 (3d Cir. 1997)). Thus,
courts conduct "only a limited inquiry" to determine whether
probable cause supports the charges.  *Id.*

Once an extradition order has issued, "[a]n individual
challenging a court's extradition order may not appeal directly,
because the order does not constitute a final decision under 28
U.S.C. § 1291, but may petition for a writ of habeas corpus."  *Id.*
(citing *Sidali*, 107 F.3d at 195).  "On habeas, a reviewing court
may consider only 'whether the magistrate [judge] had

---

[3]  We review the District Court's finding of probable cause
de novo and its factual findings for clear error.  *United States v.
Harple*, 202 F.3d 194, 196 (3d Cir. 1999).

jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding [of probable cause].'" *Id.* (quoting *Sidali*, 107 F.3d at 195). In determining whether there was evidence "warranting the finding [of probable cause]," *id.*, properly authenticated "[d]epositions, warrants, or other papers . . . offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence [at the] hearing. . . ." 18 U.S.C. § 3190 (2009).

Evidence that might be excluded at a trial, including hearsay evidence, is generally admissible at extradition hearings. *See Hoxha*, 465 F.3d at 561 ("A judge [in an extradition proceeding] may rely on hearsay evidence in considering whether probable cause is satisfied." (citing *In re A.M.*, 34 F.3d 153, 161 (3d Cir. 1994))); *see also Snider v. Seung Lee*, 584 F.3d 193, 204 (4th Cir. 2009); *Emami v. U.S. Dist. Court*, 834 F.2d 1444, 1451 (9th Cir. 1987). This is so because "[t]he role of the magistrate judge in an extradition proceeding is . . . to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." *Sidali*, 107 F.3d at 199 (quotations and citations omitted).

Ms. Harshbarger argues that the hearsay evidence on which the Magistrate Judge relied, although admissible under 18 U.S.C. § 3190, was insufficient to establish probable cause under the extradition treaty between the United States and Canada. The extradition treaty provides that

> [e]xtradition shall be granted only if the evidence be found sufficient, *according to the laws of the place where the person sought shall be found*, either to justify his committal for trial if the offense of which he is accused had been committed in its territory or to prove that he is the identical person convicted by the courts of the requesting State.

Treaty on Extradition, U.S.- Can., art. 10(1), Dec. 3, 1971, 27

6

U.S.T. 983 (emphasis added).

Ms. Harshbarger, focusing on the Treaty's language referring to the sufficiency of the evidence "according to the laws of the place where the person sought shall be found," argues that she was found in Pennsylvania, and Pennsylvania excludes hearsay evidence. The Government responds that 18 U.S.C. § 3190, the federal statute that governs extradition proceedings, explicitly allows for the use of hearsay at an extradition hearing. It notes that in *Collins v. Loisel*, the Supreme Court held that hearsay may form the basis for extradition. 259 U.S. 309, 317 (1922). Numerous federal cases since then have also so held. Judge Friendly, writing for the court in *Shapiro v. Ferrandina*, quoted the following language from Justice Brandeis' opinion in *Collins*:

> Thus, unsworn statements of absent witnesses may be acted upon by the committing magistrate, although they could not have been received by him under the law of the State on a preliminary examination.

478 F.2d 894, 902 (2d Cir. 1973) (quoting *Collins*, 259 U.S. at 317).

The extradition treaty between the United States and Canada does not contravene the general rule that hearsay evidence can establish probable cause. In *Bingham v. Bradley*, Canada sought extradition of a habeas petitioner who was found in Illinois. 241 U.S. 511, 513 (1916). The extradition treaty between the United States and Canada at the time provided for extradition "upon such evidence of criminality as, according to the laws of the place where the fugitive . . . shall be found, would justify his apprehension . . . if the crime or offense had there been committed." *Id.* at 517 (citation omitted). The statute governing the admissibility of hearsay evidence at extradition hearings provided that "any depositions, warrants, or other papers . . . shall be admissible in evidence at the hearing if properly authenticated . . . ." *Id.* (citing Rev. St. § 5271, as amended by Act of Aug. 3, 1882, ch. 378, § 5, 22 Stat. 216).

The Supreme Court concluded that the hearsay affidavits of Canadian officials were competent evidence at an extradition hearing, reasoning that:

> It is one of the objects of § 5271 to obviate the necessity of confronting the accused with the witnesses against him; and a construction of this section, or of the treaty, that would require the demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty.

*Bingham*, 241 U.S. at 517 (citations omitted).

The treaty and statutory provisions in *Bingham* do not differ materially from the relevant provisions of the extradition treaty currently in force between the United States and Canada and the currently applicable statute, 18 U.S.C. § 3190, which is the successor statute to § 5271. *See* Historical and Statutory Notes to 18 U.S.C.A. § 3190 (West 2010). Although the petitioner in *Bingham* challenged the competency of the hearsay evidence rather than its sufficiency, we see no reason to depart from the Supreme Court's reasoning when interpreting the treaty and successor statute in this case. As the Court stated in *Bingham*, it would "defeat the whole object of the treaty" to require Canadian officials to appear in the United States in order to offer live testimony at extradition hearings. 241 U.S. at 517.

Ms. Harshbarger relies on *In re Sylvester* for the contrary proposition that "a plain reading of the [extradition treaty between the United States and Canada] indicates that the sufficiency of the evidence is to be adjudged under Pennsylvania law . . . ." No. 05-0490, 2006 WL 6323514, at *3 (M.D. Pa. Feb. 14, 2006). The District Court properly found *Sylvester* to be "unpersuasive," App. at 21, because it relies on none of the above-referenced Supreme Court authorities that have interpreted similar treaty provisions. We reject Ms. Harshbarger's argument that hearsay evidence was insufficient to support extradition.

8

We have examined Ms. Harshbarger's other arguments and find them to be without merit.  The Canadian affidavits provided ample evidence of probable cause for the reasons expressed by the District Court.  Her equal protection challenge is curious and unique.  She argues that because the individual was "unextraditable in *Sylvester* . . . , the extradition order in place against her violates her constitutional right to equal protection."  Appellant's Br. at 7.  The equal protection afforded by the Fifth Amendment (and, by incorporation, the Fourteenth Amendment) is for federal or state action.  Ms. Harshbarger cites no legal authority to support her argument that a mere conflict in legal interpretation by judges in the same court supports an equal protection challenge, and we have found none.  Ms. Harshbarger also cites no authority to support her void-for-vagueness challenge to the Canadian statute.  In any event, the challenge amounts to a defense that should be heard in the Canadian court, not here.  *See Charlton v. Kelly*, 229 U.S. 447, 462 (1913).

### III.

For the above-stated reasons, we will affirm the judgment of the District Court.